HECHT, Justice.
In this case, we determine whether a substantial change of circumstances justifying a modification of a dissolution decree occurred when a mother with joint legal custody and primary physical care of two children moved approximately seventy miles from a Des Moines suburb to a rural home in a new school district. Upon our de novo review, we find the children’s father failed to prove the change of circumstances justified a modification of the decree. Accordingly, we affirm the court of appeals decision, reverse the district court’s order modifying the physical care provisions of the parties’ dissolution decree, and remand for determination of child support and a visitation schedule based upon the present circumstances.
I. Background Facts and Proceedings.
Ernst Hoffman,[1] an emergency room physician, married Tracy Hoffman,[2] a registered nurse, in 1996. The couple had two children together: a daughter born in 1999 and a son born in 2002. Tracy became the primary caretaker of the children, enabling Ernie to concentrate his energy on his profession and provide a high standard of living for the family.
*29 During the marriage, the Hoffman family spent much of their leisure time engaging in equine and rodeo activities, including barrel-racing and roping competitions. According to Tracy, the parties’ daughter has “grown up on horses” and has had success in competitive barrel racing, pole bending, goat tying, and pleasure horse events. The daughter had her best season in 2012, earning championship honors at two separate rodeos. The parties’ son also participates in rodeo events, including dummy roping, breakaway roping, barrels, and poles.
Ernie and Tracy divorced in 2006. The divorce decree incorporated the parties’ stipulations and contained no provision establishing that the parties agreed to remain in a particular school district or geographical area. The decree granted the parents joint legal custody of the children, but allocated primary physical care of the children to Tracy, with Ernie receiving extraordinary visitation.[3] See Iowa Ct. R. 9.9 (defining “extraordinary visitation” as visitation that “exceeds 127 days per year”).
Tracy and Ernie maintained residences in close proximity to each other for a time after the dissolution. Tracy purchased a home in Pleasant Hill, Iowa, near the former marital residence, with a barn and five acres for the horses Tracy and the children owned. She did so in furtherance of stability for the children after the divorce and for the purpose of minimizing disruption in their schooling and extracurricular — especially equine- — activities. Ernie also lived in Pleasant Hill for a time after the divorce, but he eventually built a new home nearby in Runnells, intending to stay in close proximity to, and actively involved with, the children. Ernie has had extensive involvement in the children’s lives and has maintained a close relationship with them after the dissolution.
Both Ernie and Tracy eventually married new spouses. Ernie married Dawn Hoffman in 2008. Tracy married Rob Bain in 2012. Rob owns a residence south of Albia, about seventy miles from Ernie and Dawn’s home in Runnells.
In 2011, before purchasing the land for the Runnells home, Ernie asked Tracy to confirm she intended to maintain her residence in Pleasant Hill. In an email message to Tracy, Ernie stated he and Dawn “would be looking elsewhere if the kids were going to be pulled to a different area.” At the time, Tracy and Rob were engaged, but not yet married. Tracy replied that she and Rob had not yet decided to vacate the Pleasant Hill residence and stated they would “cross that bridge when/ if’ they needed to do so. Tracy communicated with Ernie the following day, informing him that a move “to Albia at [some point] is a realistic option.” Ernie moved forward with his Runnells home construction plans under the assumption Tracy would not move for at least a few years.
Tracy and Rob were married in January 2012, and for several months afterward, maintained two residences — Tracy’s in Pleasant Hill and Rob’s in Albia. However, Tracy had fallen behind on mortgage payments and was experiencing financial stress. Believing consolidation of two households into one would foster their new family unit, reduce financial pressures, and make their lives less chaotic, they eventually decided to sell Tracy’s home in Pleasant Hill and live together in Rob’s home near Albia. Tracy’s decision to move with *30 the children to Albia was also influenced by the fact that Polk County’s zoning ordinance authorized the family to keep only two horses on the Pleasant Hill property. This zoning restriction posed a problem because she and the two children kept at least three and sometimes as many as five horses at any given time.
Tracy listed her Pleasant Hill property for sale, but did not promptly notify Ernie. When he was informed of the listing by the parties’ daughter on May 10, 2012, Ernie asked Tracy whether she had made plans to move. Assuming a change of residence was not imminent because it could take many months to sell her property, Tracy told Ernie no specific plan for a move had been established.
Tracy later decided to move with the children to Albia in December 2012. She informed Ernie of this plan by email on November 27, 2012. After learning of the imminent move, Ernie promptly filed a petition seeking a modification of the physical care and child support provisions of the dissolution decree and sought injunc-tive relief preventing Tracy from changing the children’s residence. Ernie asserted the proposed move would disrupt the children’s lives by pulling them away from teachers, friends, and peers; prevent the children from participating in the athletic activities they enjoyed in the Southeast Polk Community School District; separate them from their half-brother, R.H.;[4] negatively affect their relationship with four grandparents living in the Des Moines area; and substantially interfere with his extraordinary visitation and active role in parenting the children. Tracy filed a counterclaim seeking an increase in child support to account for a substantial increase in Ernie’s income since the 2006 dissolution decree.
The district court denied Ernie’s application for a temporary injunction, finding the reason for Tracy’s move “[didn’t] appear to be for the purpose of circumventing [Ernie]’s rights as a joint legal custodian.” Tracy and the children moved to Albia in December 2012, and the children were enrolled as students .in the Albia Community School District in January 2013.
Before ruling on the petition for modification, the district court appointed attorney Lora McCollom as guardian ad litem (GAL) to represent the children’s best interests. McCollom interviewed Ernie, Dawn, Tracy, Rob, and the children, and submitted a report to the district court recommending modifications of the decree. In particular, McCollom recommended that Ernie should become the primary physical custodian so that the children could return to schools within the Southeast Polk school district, where they preferred to be. McCollom’s recommendation would, in her words, allow the children to “receive their education in a district with more resources, more options, and more activities, while still allowing them to continue to enjoy rodeo and to participate in the other outdoor activities in Albia.” McCollom’s recommendations were based on her evaluation of several factors considered by this court in In re Marriage of Frederici, 338 N.W.2d 156, 160 (Iowa 1983).
The first factor McCollom considered was the reason for Tracy’s relocation of the children’s residence. See Frederick 338 N.W.2d at 160. McCollom concluded Tracy did not move to Albia to thwart Ernie’s parental rights. However, McCol-' lom believed the move was a matter of “convenience to Tracy and to Rob, and not *31 for the best interests of the kids” who were separated from their friends and much of their family as a consequence of their relocation. McCollom’s report also emphasized that Tracy did not move to Albia in furtherance of a job promotion or to be closer to a family support system.
McCollom also based her recommendations on an assessment of the characteristics of the children’s new home environment and its distance from Polk County. See id. She concluded the Albia residence provided the children with a better venue for their rodeo and other outdoor activities.[5] Yet, McCollom found the rural home located several miles outside Albia is somewhat “isolated” and requires the children to spend substantial time in the car before school on Mondays when returning from weekends with Ernie.
McCollom’s report assessed other advantages and disadvantages of the Albia residence. See id. Among the perceived advantages was the fact that the Albia school district offers a lower teacher-to-student ratio than the Southeast Polk school district. The smaller school in Al-bia, McCollom opined, also offers the children the prospect of enhanced opportunities to participate in school-sponsored sports activities. Disadvantages arising from the move to Albia, according to McCollom, included a loss of mid-week overnight visits with Ernie during the school year and the increased distance affecting visitation. In comparing the academic opportunities offered by the two school districts, McCollom cited data suggesting that the Southeast Polk school district offered higher student proficiency rates, better graduation rates, and a greater percentage of graduates achieving college degrees.
McCollom’s assessment also considered the impact of the move on both the children and their parents. See id. She noted both children experienced a modest diminution in their academic performance after moving to Albia. The move was a substantial adjustment for them and, not unexpectedly, produced stress in their relationship with Tracy. Both children reported to McCollom that they missed their friends and activities in Polk County.
McCollom noted the children have the luxury of having two good, loving parents and two caring and attentive step-parents who provide healthy and suitable home environments for the children. However, she opined the move to Albia constitutes a material and substantial change in circumstances justifying a change in the physical care provisions of the divorce decree. McCollom recommended primary care be transferred to Ernie in part because she believes better academic opportunities are available to the children in the Southeast Polk school district, because the children would prefer to live in Runnells where they would be closer to more friends and extended family, and because the children’s equine and rodeo interests could be best facilitated during extended summer visitation with Tracy at the Albia residence.
The district court modified the decree by granting Ernie primary physical care, prescribing an amended parenting schedule, and setting a child support obligation for Tracy. The court largely followed McCollom’s recommendations and found “Tracy’s decision to relocate is premised primarily on her wants, rather than the children’s best interests or their needs.”
*32 Tracy appealed and sought a stay of the district court’s ruling. We granted the stay and transferred the case to the court of appeals. The court of appeals concluded Ernie had failed to prove a substantial change of circumstances affecting the best interests of the children. The court of appeals also concluded Ernie failed to prove he has a superior ability to minister to the children’s needs. The court therefore reversed the modification ruling in part[6] and remanded the case to the district court for the determination of a suitable visitation schedule for Ernie and an appropriate amount of child support under the present circumstances.
Ernie sought, and we granted, further review.
II. Scope of Review.
Petitions to modify the physical care provisions of a divorce decree lie in equity. See In re Marriage of Quirk-Edwards, 509 N.W.2d 476, 476 (Iowa 1993). Accordingly, our review is de novo. Id.; see Iowa R.App. P. 6.907. Although we make our own findings of fact, “when considering the credibility of witnesses the court gives weight to the findings of the trial court” even though we are not bound by them. In re Marriage of Udelhofen, 444 N.W.2d 473, 474 (Iowa 1989). The children’s best interest is the “controlling consideration.” In re Marriage of Leyda, 355 N.W.2d 862, 865 (Iowa 1984); see also In re Marriage of Weidner, 338 N.W.2d 351, 356 (Iowa 1983) (“first and foremost consideration”). Utilizing the best-interest standard “provides the flexibility necessary to consider unique custody issues on a case-by-case basis.” In re Marriage of Hansen, 733 N.W.2d 683, 696 (Iowa 2007).
III. Analysis.
The general principles guiding our adjudication of petitions for modification of dissolution decrees are well-established:
To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children’s best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children’s well being.
Frederici, 338 N.W.2d at 158. These principles clearly place a heavy burden on a parent requesting a modification. The burden is necessarily a heavy one under-girding the fundamental policy that “once custody of children has been fixed it should be disturbed only for the most cogent reasons.” Id.
A decision by a joint custodial parent with physical care of minor children to change residences is “the kind of decision the other joint custodian has a right to be consulted about.” Id. at 159. Ernie contends Tracy failed to inform him and consult with him about her plan to move the children from their Polk County home. See In re Marriage of Mayfield, 577 N.W.2d 872, 874 (Iowa Ct.App.1998) (concluding one parent’s decision to move “should not have been made without [the *33 other parent’s input,” and considering the lack of communication “adverse to [the moving parent’s] position”). While we believe Tracy could have been more forthcoming about the development of her plan to move with the children to Albia, the record reveals Ernie anticipated the move might occur and clearly communicated his opposition to the prospect more than a year before it happened. When, as in this case, joint custodial parents disagree on the question of whether their children’s residence should be changed, “the parent having physical care of the children must, as between the parties, have the final say concerning where [the children’s] home will be.” Frederici, 338 N.W.2d at 159. We have noted that “[t]his authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian could veto its exercise.” Id. at 159-60. And in our “highly mobile society” — a characterization we used in Frederici that is surely no less true today — periodic relocation is hardly a surprise. Id. at 160.
Yet, Tracy’s authority as the physical care custodian to decide the location of the children’s residence is not unlimited. Her decision is, as a consequence of Ernie’s modification proceeding, subject to judicial review based on well-established principles protecting the best interests of the children. With these principles in mind, we turn to the circumstances surrounding the children’s move from Polk County to rural Albia.
A. Tracy’s Motive for the Move. We find no credible evidence in this record tending to prove Tracy moved the children to rural Albia to defeat Ernie’s visitation rights or undermine his relationship with the children. Cf In re Marriage of Grantham, 698 N.W.2d 140, 146 (Iowa 2005) (modifying physical care after one parent “maintained a persistent pattern of conduct that ... served to diminish the children’s relationship with their mother”); Quirk-Edwards, 509 N.W.2d at 480 (modifying physical care when “the evidence was overwhelming that [one parent] willfully sought to deprive [the other] of ... visitation”); Leyda, 355 N.W.2d at 867 (modifying physical care when one parent’s relocation was “motivated in large part by [a] driving need to separate [the child] from her father, emotionally and physically”); In re Marriage of Downing, 432 N.W.2d 692, 694-95 (Iowa Ct.App.1988) (modifying physical care when the moving parent denied visitation, withheld health information, intercepted mail, and even “remov[ed] the telephone from the house when she left the children alone so they would not call their father”). The move was instead calculated to form a more normal and cohesive family unit with her new husband and the children. We conclude Tracy’s motivations to live under the same roof with her new husband and to eliminate financial pressures associated with maintaining two separate households were quite appropriate under the circumstances. Although Tracy did not relocate to Albia to realize a more lucrative employment opportunity as was the case in Frederici, her motivations for the move were no less legitimate. See Frederici, 338 N.W.2d at 158; In re Marriage of Behn, 416 N.W.2d 100, 101 (Iowa Ct.App.1987) (‘We do not find Barbara’s moves with her [new] husband justify a change of physical care.”); see also Hollandsworth v. Knyzewski, 78 Ark.App. 190, 79 S.W.3d 856, 873 (2002) (“A rule of law that effectively requires custodial parents to gamble custody of their children before they can live with their children and new spouses ... seems the very antithesis of domestic stability.”); Theresa Glennon, Still Partners? Examining the Consequences of Post-Dissolution Parenting, 41 Fam. L.Q. 105, 125-36 (2007) (exploring a *34 multitude of reasons why parents with physical care choose to move).
B. Location, Distance and Disruption. Ernie is understandably opposed to the move to Albia because it interferes with the convenient visitation he enjoyed when the children lived in Pleasant Hill. The children’s new home separates them from Ernie by approximately seventy miles and makes visitation significantly more challenging to him. Yet, we found in Frederici a 700-mile move causing much greater geographic separation between children and a joint custodial parent was “not alone sufficient to justify shifting physical care to [a] non-moving joint custodian.” Frederici, 338 N.W.2d at 160; see also In re Marriage of Whalen, 569 N.W.2d 626, 630 (Iowa Ct.App.1997) (declining to modify physical care when one parent moved to a new residence fewer than 150 miles away with a new spouse, even though the nonmoving parent “was first told of the move by the children, who went to him telling him they did not want to move”); In re Marriage of Hunt, 476 N.W.2d 99, 100, 102 (Iowa Ct.App.1991) (finding no substantial change in circumstances when one parent moved from Waterloo to Muscatine, approximately 130 miles); In re Marriage of Howe, 471 N.W.2d 902, 903 (Iowa Ct.App.1991) (finding no substantial change in circumstances when one parent moved from Greenfield to Adel, a distance of forty-two miles). Further, “[pjhysical care issues are not to be resolved upon perceived fairness to the spouses, but primarily upon what is best for the child.” Hansen, 733 N.W.2d at 695.
Ernie contends the move of seventy miles has disrupted the children’s lives by distancing them from their grandparents and network of friends, and displacing them from schools where they were comfortable. The record shows the disruption has produced some emotional discord between Tracy and the parties’ teenage daughter, who expressed to the GAL a desire to move back to the Pleasant Hill area where her friends reside. On one occasion, Tracy and the daughter slapped each other. On another occasion while they were traveling in a car, an argument ensued and emotions escalated. Tracy parked the car and used her phone to summon a police officer who calmed the daughter and defused the conflict. We find, however, that these unfortunate inei- • dents in which the emotions of a mother and her teenage daughter escalated do not fairly characterize the quality and character of the relationship. This finding is consistent with the GAL’s assessment that despite “bumps in the road,” mother and daughter “do very well together.”
As we have previously noted, “[n]o move is easy, even for adults. Some emotional trauma can be expected whenever children are removed from familiar to unfamiliar surroundings.” Frederici, 338 N.W.2d at 160. And “just as [the emotional trauma normally attending a move] does not prevent parents from moving generally, it is not alone sufficient to justify shifting physical care to the non-moving joint custodian.” Id. Although we do not intend to minimize the reality of such trauma, we are convinced on this record that it is transitory and not permanent in nature. Notwithstanding the period of adjustment for the children, the move will allow them to maintain their close relationship with Tracy, who has been their primary caretaker since their births. See Hansen, 733 N.W.2d at 696 (“Stability and continuity factors tend to favor a spouse who, prior to divorce, was primarily responsible for physical care.”). Our rules governing modification of decrees place “greater importance on the stability of the relationship between [children] and the[ir] primary car *35 egiver [than on] the physical setting of the child[ren].” In re Marriage of Williams, 589 N.W.2d 759, 762 (Iowa Ct.App.1998); see Whalen, 569 N.W.2d at 630 (“While stability is important in a child’s life, stability can be nurtured as much by leaving children with the same custodial parent as leaving them in the same neighborhood.”).
C. The Children’s Preferences. The parties’ daughter expressed to McCollom an adamant preference to remain in the Southeast Polk school district. Her brother reported that he misses his friends in Polk County, but he stopped short of expressing a desire to move back there. The court considers a child’s wishes on this question, taking into account the child’s age and maturity. Iowa Code § 598.41(3)CO (2013); see Hansen, 733 N.W.2d at 696 (stating although section 598.41(3) does not expressly apply to physical care decisions, the factors in the statute are relevant considerations); see also Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970) (“[W]hen a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling, may be considered by the court, with other relevant factors, in determining child custody rights.”). Although the teenage daughter’s preference is significant in our view, it is entitled to less weight in this modification action than it would be given when allocating physical care in an original custody proceeding. See In re Marriage of Zabecki, 389 N.W.2d 396, 399-400 (Iowa 1986); Smith v. Smith, 257 Iowa 584, 591, 133 N.W.2d 677, 681 (1965). Iowa courts have noted this distinction where, as here, a child’s preference to reside with one parent seems to be rooted in resistance to a physical care provider’s relocation. See In re Marriage of Thielges, 623 N.W.2d 232, 239 (Iowa Ct.App.2000) (denying modification when the record suggested one child’s “preference has more to do with her Iowa friends and school than it does with [her parents]”); In re Marriage of Smith, 491 N.W.2d 538, 539-40 (Iowa Ct.App.1992) (denying modification where children were unhappy about their relocation from an urban area to a rural area).
D. Relative Advantages and Disadvantages of the Albia Residence. A central feature of McCollom’s rationale for recommending a modification of primary care was her conclusion that the Southeast Polk school district offers more resources and educational opportunities than the Al-bia school district. After conducting online research and consulting unidentified educators, McCollom concluded the Southeast Polk school district has “far more resources, opportunities, and course options than Albia.” She also compared other data from the two districts and reported as follows:
Southeast Polk students have a higher percentage of 8th grade students proficient in reading (77.42% vs. 72.54%), and a higher percentage of 11th grade students proficient in both math (74.18% vs. 73.37%) and reading (73.80% vs. 71.01%). The only area that Albia had a higher percentage of proficient students was 8th grade math (80% vs. 77.58%).
McCollom also reported other data suggesting that higher percentages of Southeast Polk High School students graduate from high school (93.1% vs. 81.6%), complete some college courses (59.8% vs. 37%), complete an associate degree (23.8% vs. 17.7%), or complete a bachelor’s degree (23.8% vs. 12.5%) than their counterparts from the Albia school district.
The court of appeals considered these comparative data and concluded “the difference, if any, between the quality of the two schools is not material and does not constitute a substantial change in circumstances.” The court reasoned further:
*36 The data regarding graduation rates and college matriculation rates does not necessarily tell us anything about the quality of instruction within the two school districts. First, the difference in some metrics do not appear statistically meaningful or legally material. For example, the GAL reported that Southeast Polk students have a higher percentage of 11th grade students proficient in math (74.18% vs. 73.37%). Further, the data [were] not one-sided. For example, the GAL reported Albia has a higher percentage of 8th grade students proficient in math (80% vs. 77.58%). In short, the data was mixed or inconclusive at best. Further, because the data cited by the GAL was static, it fails to tell us anything meaningful about the trends within each district and the persistence of any meaningful distinction, between the performance of the students within each district. Most important, however, the GAL’s conclusion that the data supported the conclusion that one district was superior to the other is f not sound. The GAL’s report did not account for socioeconomic differences (such as race, ethnicity, marital status of the parents, educational attainment of the parents, household income etc.) between the two school districts. Relatedly, the GAL’s report did not account for the differences between a large urban district and a small rural school district and the potentially different aspirations of the students within such districts as measured by plans for educational advancement, occupational choice, and future income expectations. In sum, the data, in particular college entrance data, may not reflect on the quality of instruction within the respective districts so much as the different expectations and aspirations of the students and parents within the districts.
The GAL’s report also focused greatly on the data provided on the schools’ website without accounting for other factors that might relate to the overall educational experience of the children. For example, the GAL report did not account for the Albia district’s correspondence program with Indian Hills Community College that provided educational opportunity in addition to that provided by Albia.
We agree with the reasoning and conclusions of the court of appeals on this point and conclude the record does not establish that the children’s educational interests dictate that they should reside in the Southeast Polk district. Cf. In re Marriage of Moore, 526 N.W.2d 335, 337 (Iowa Ct.App.1994) (concluding the differences between public and private school did not substantiate a parent’s concern that one type of education was inferior, and did “not provide a basis for modification”). Notwithstanding the stress associated with the move to Albia and the unfortunate loss of their step-brother during the period of adjustment to the move, the children’s course grades since the move have remained essentially stable compared to their academic performance before the move.
In assessing the other advantages and disadvantages of the children’s Albia residence, we find relative equipoise. Although the’ children have verbalized that they miss athletic activities they enjoyed in the Southeast Polk district, they have become involved in similar activities in Albia and likely will see greater opportunities there to participate in organized sports. Separation from friends who lived in their Pleasant Hill neighborhood could be counterbalanced by the children’s prospects for new friendships in Albia and the greater opportunities to enjoy their equine hobbies *37 in a rural area.[7] And even though the children’s primary residence is in Albia, they will be able to maintain regular contact with Polk County and the important people in their lives who reside there.
We do not underestimate the disadvantages the relocation poses for Ernie. The distance he must travel for visitation and to attend school and athletic events is substantial if the children remain in Albia. The frequent travel to and from Albia will cost him both time and money if primary care of the children is not modified. However, his work schedule — working twelve-hour shifts four nights and eight days each month — could provide him with extraordinary flexibility for visitation opportunities unavailable to other parents with customary work-week schedules.[8]
Upon our de novo review of the record, we agree with the court of appeals’ determination that, under all the circumstances presented here, Ernie has failed to meet his heavy burden to prove the children’s move to Albia constitutes a substantial change of circumstances affecting the best interests of the children. We also agree with that court’s conclusion that Ernie has failed to. prove a superior ability to minister to the needs of the children. Although he is an excellent parent who has demonstrated an admirable record of involvement in the lives of the children, we cannot find on this record that his ability to minister to the needs of the children is superior to Tracy’s. “If both parents are found to ■ be equally competent to minister to the children, custody should not be changed.” In re Marriage of Rosenfeld, 524 N.W.2d 212, 213 (Iowa Ct.App.1994).
We have considered all of the arguments of the parties but have addressed only those of material significance to our decision. In view of our decision, we must remand this case to the district court for a determination of an appropriate visitation schedule. As the district court ordered a modification in Ernie’s favor, it did not decide Tracy’s claim that Ernie’s child support obligation should be increased to reflect a substantial change in his income. Accordingly, on remand the district court shall modify Ernie’s child support obligation consistent with the parties’ income and the child support guidelines.
IV. Conclusion.
“We do not award custody by determining whether a rural or urban Iowa upbringing is more advantageous to a child.” In re Marriage of Engler, 503 N.W.2d 623, 625 (Iowa Ct.App.1993). Because we conclude Ernie has failed to prove the children’s move to Albia constitutes a substantial change of circumstances or that his ability to minister to the needs of the children is superior to Tracy’s, we conclude the district court erred in modifying the dissolution decree. Accordingly, we affirm the decision of the court of appeals and reverse the district court’s modification ruling. We remand to the district court for a determination of an appropriate visitation schedule and modification of Ernie’s child support obligation based on the present financial circumstances of the parties and the child support guidelines.
DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT *38 COURT JUDGMENT REVERSED AND CASE REMANDED.
All justices concur except WATERMAN, WIGGINS, and MANSFIELD, JJ., who dissent.

. Mr. Hoffman also goes by "Ernie,” so we use that name here.

. Tracy’s last name is now Bain. We refer to her as Tracy.

. The visitation arrangement called for Ernie to have the children with him every Thursday after school until Friday morning, every other weekend from Thursday after school until Monday morning, every other week during the summer, and alternating holidays and spring break periods.

. R.H. was born to Ernie and Dawn after their marriage. He fell ill during the pen-dency of the modification proceeding and tragically passed away.

. Rodeo is an integral part of the children’s lives. Both children stated during separate one-on-one interviews with McCollom that the best aspect of living in Albia was their horses and rodeo activities and that they both wanted to continue participating in rodeo.

. The court of appeals affirmed the district court's determination that the parties should pay their own attorney fees incurred in the district court proceedings. However, it ordered Ernie to pay $7625 toward Tracy's attorney fees on appeal.

. The record reflects the Bain family now keeps more than fifteen horses on their Albia property.

. Ernie’s work schedule also requires him to work every other weekend and every other holiday. Since the children’s move to Albia, Ernie has chosen not to use his days off work to attend the children’s activities because he “doesn’t agree with them living in [and] having school in Albia.”