**IN THE COURT OF APPEALS OF IOWA**

No. 15-1030
Filed April 6, 2016

**JOHNATHAN ERDMAN,**
      Plaintiff-Appellant,

**vs.**

**ELIZABETH VOPAVA, n/k/a ELIZABETH MUMFORD,**
      Defendant-Appellee.
_____

      Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


      A father appeals from the district court's denial of his petition to modify the

custody provisions of a previous modification order. **AFFIRMED AS MODIFIED**

**AND REMANDED.**



      Colin R. McCormack of Van Cleaf & McCormack Law Firm, L.L.P., Des

Moines, for appellant.

      Ronald R. Rieper, Des Moines, for appellee.



      Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Johnathan Erdman, the father of A.E., appeals from the district court's denial of his petition to modify the custody provisions of the previous modification order. He maintains the district court should have modified custody to place A.E. in his physical care rather than leaving her in the physical care of her mother, Elizabeth Mumford. In the alternative, Johnathan complains that he received less scheduled parenting time with A.E. than either he or Elizabeth requested, and he asks that we modify the schedule accordingly.

## I. Background Facts and Proceedings

Johnathan and Elizabeth are the parents of A.E., who was born in 2007. The parties were romantically involved but were never married. Their relationship ended sometime after a domestic violence incident in February 2012. As a result of the incident, Johnathan was charged with harassment in the first degree and domestic abuse assault with intent to inflict serious injury. As part of an agreement he entered into with the State, Johnathan pled guilty to harassment in the third degree and the other charges were dismissed. Johnathan was sentenced to a term of incarceration of thirty days. Additionally, a criminal no-contact order, preventing Johnathan from contacting Elizabeth, was entered and set to remain in effect through April 19, 2017.

The parties entered a stipulated decree establishing paternity, custody, visitation, and child support in September 2013. The parties shared joint legal custody of A.E. with Elizabeth receiving physical care of the child. Johnathan received scheduled parenting time with A.E. every Wednesday night and every other weekend.

In October 2013, Elizabeth married Caleb Mumford. Caleb was in the military and stationed in Afghanistan; Elizabeth and A.E. remained in Iowa.

In January 2014, Johnathan and Elizabeth approved and signed a modification order. The order essentially confirmed all terms and conditions of the original decree except one minor change to Johnathan's parenting time with A.E.

In July 2014, Johnathan filed an application for modification. In it, he asked the court to place A.E. in his physical care. On August 15, 2014, Elizabeth answered and filed a cross-application for modification. Elizabeth indicated that Caleb had active duty orders for Fort Bragg, North Carolina and she was finalizing plans to move with A.E. and join him. She requested, that the court deny Johnathan's request for physical care of A.E. and instead modify Johnathan's scheduled parenting time to accommodate the distance between the parties' homes.

On August 19, 2015, Elizabeth had a letter delivered to Johnathan that stated she was moving to North Carolina with A.E. the following day. She included a phone number where A.E. could be reached, information pertaining to her new school, and the address of their new home. The letter directed Johnathan to contact Elizabeth's attorney with any questions. Johnathan was not allowed to say goodbye to A.E. before the move took place.

On September 12, 2014, Johnathan filed an application to initiate contempt proceedings against Elizabeth, asserting that she had intentionally prohibited him from exercising his parenting time with A.E. On December 2,

Elizabeth filed an application to initiate contempt proceedings against Johnathan for his failure to pay child support.

Following a hearing on both applications, the district court found both parties to be in contempt in January 2015. The court found Elizabeth was unable to comply with the court's order regarding Johnathan's parenting time because of her move to North Carolina, but "it was because of her own, unilateral decision that she moved and became unable to comply," and thus, there was "no justification for Elizabeth's willful disobedience to the Court's order." Elizabeth was ordered to provide make-up parenting time for Johnathan over A.E.'s school breaks and during summer vacation. Johnathan was found in contempt for "28 counts of willfully violating the Court's order by not paying child support in full each and every month as ordered." The court found, "Johnathan has the ability and resources to make his child support payments in full should he [choose] to do so, but he has chosen not to in wanton disregard for Elizabeth's rights or his daughter's care." Johnathan was ordered to make an extra $100 in monthly child support payments toward the $5638 he was in arrears.

A hearing on the parties' applications to modify was held on March 31, and April 1, 2015. At trial, Johnathan was asked about the financial affidavits he supplied the court. Johnathan's testimony was at odds with his affidavits, and he claimed to be unaware of several areas of his finances including how much he earned monthly or even for the prior year generally, how much debt he owed for outstanding court costs and fines, how much he owed on his student loan, and how much he owed on the home he was purchasing on contract. Johnathan testified his lack of knowledge was due to the fact that his fiancé was in charge of

the family finances, but she was also unable to testify about Johnathan's income and she testified he had not filed his income taxes for 2013 or 2014. It appeared Johnathan earned approximately $700 per month, but he agreed he could earn more if he became employed outside of the home rather than running an in-home daycare business. He testified his fiancé contributed to the family finances, but he was unable to testify how much she earned or the amount of their monthly bills. Johnathan lived in his four-bedroom home with three other people—his fiancé, her child from another relationship, and their child.

Elizabeth was expecting a child with her husband at the time of the modification hearing. She, Caleb, and A.E. lived in a three-bedroom home off of the military base in North Carolina. Elizabeth did not work outside of the home. Caleb earned approximately $30,000 annually and, additionally, received approximately $1000 per month as a housing stipend. In school, A.E. was slightly behind in reading and handwriting, but Elizabeth and A.E.'s teacher had set up an individual education plan and A.E. was working on improving in those areas. She was a healthy, active child.

The district court filed its ruling on May 13, 2015. The court found that there had been a substantial change in circumstances that warranted modification due to Elizabeth's and A.E.'s move to North Carolina. The court determined it was in A.E.'s best interests to remain in her mother's physical care and adjusted Johnathan's parenting time to give him increased time with A.E. during her summer break from school. The court also provided a schedule and order regarding "remote contact," which provided:

Phone: Johnathan shall be entitled to no less than three (3) phone calls per week with A.E. (with "week" being defined as Monday through Sunday). The parties are encouraged to agree to a schedule for these communications, but, if they cannot, these phone calls will begin at 7:30 pm Eastern Time/6:30 pm Central Time on Monday, Tuesday, Thursday, Friday, and Sunday.

Skype: Johnathan shall be entitled to one (1) Skype communication per week with A.E. (with "week" being defined as Monday through Sunday). The parties are encouraged to agree to a schedule for these communications, but, if they cannot, these phone calls will begin at 7:30 pm Eastern Time/6:30 pm Central Time on Wednesday and Saturday.

Johnathan's child support obligation was not modified. Additionally, the court ordered that the parties "split equally the responsibility for arranging, facilitating, and paying for all transportation related to all visitation."

Following the court's ruling, Johnathan filed a motion to enlarge and amend. Elizabeth resisted and the district court denied the motion.

Johnathan appeals.

**II. Standard of Review**

Because a petition to modify the physical care provisions of a prior order is heard in equity, our review is de novo. Iowa R. App. P. 6.907; *see also In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "Although we make our own findings of fact, 'when considering the credibility of witnesses the court gives weight to the findings of the trial court.'" *Hoffman*, 867 N.W.2d at 32 (citation omitted). The controlling consideration is the child's best interests. *Id.*

We review the district court's rulings on evidentiary matters for an abuse of discretion. *Gerace v. 3-D Mfg. Co.*, 522 N.W.2d 312, 319 (Iowa Ct. App. 1994). We reverse "'only when such discretion was exercised on grounds or for

reasons clearly untenable or to an extent clearly unreasonable.'"  *Id.* (citation omitted).

## III. Discussion

### A. Physical Care and Parenting Time

The law guiding the modification of the physical care provisions of a prior decree is well-established in Iowa:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).  It is a heavy burden for the person seeking modification to carry because "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

Johnathan challenges the district court's determination that it is in A.E.'s best interests to be left in Elizabeth's physical care.[1]  Johnathan maintains that Elizabeth moved to North Carolina to interfere with his parenting time and relationship with A.E.  He argues this action proves that he is the superior parent. While we acknowledge that the move has disrupted Johnathan's time with A.E., we do not find credible evidence in the record that proves Elizabeth moved with

---

[1] On appeal, Johnathan maintains the district court improperly relied on his financial status and evidence of a founded child abuse report that was never admitted at trial.  We do not consider the complained of evidence in making our determination.

the intention of interfering with Johnathan's parenting time. We believe Elizabeth's move "was instead calculated to form a more normal and cohesive family unit with her new husband and [child]." *See Hoffman*, 867 N.W.2d at 33. This is a legitimate motivation for a move. *Id.*

A.E.'s paternal grandmother testified that A.E. had expressed the desire to move back to Iowa, and Johnathan's attorney implied that A.E. had been traumatized by the move. "No move is easy, even for adults. Some emotional trauma can be expected whenever children are removed from familiar to unfamiliar surroundings. But just as this factor does not prevent parents from moving generally, it is not . . . sufficient to justify shifting physical care." *Frederici*, 338 N.W.2d at 160. Additionally, although we agree with the district court that the way Elizabeth alerted Johnathan of her intention to move was unacceptable, "the parent having physical care of the child must, as between the parties, have the final say concerning where their home will be." *Id.* at 159; *see also Hoffman*, 867 N.W.2d at 33 (where the parent with physical care "could have been more forthcoming" about the decision to relocate with the children but the court concluded the parent with physical care has "the right and responsibility to provide the principal home"). Finally, while A.E. has a half-sibling in Iowa that Johnathan argues she should not be separated from, Elizabeth was pregnant with a half-sibling of A.E.'s at the time of the modification hearing.

We agree with the district court that Johnathan did not meet the burden of proving that his ability to meet the needs of A.E. is superior to Elizabeth's. Elizabeth has been A.E.'s primary caretaker since at least 2012 when the paternity decree was entered. "[O]ur case law places greater importance on the

stability of the relationship between the child and the primary caregiver over the physical setting of the child." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998). We decline to modify the placement of A.E. in Elizabeth's physical care.

That being said, we modify the summer parenting schedule set by the district court. As Johnathan points out, the court provided a more restrictive schedule than either party requested when it ordered four weeks of parenting time in the summer. Johnathan's proposed schedule included eight weeks of parenting time during the summer; Elizabeth proposed six weeks. A.E. is bonded with her father and her paternal relatives. Where a long distance relocation has occurred, a parent's opportunity for maximum continuous physical and emotional contact with both parents "can be assured by means other than a traditional, alternating-weekends visitation schedule." *In re Marriage of Thielges*, 623 N.W.2d 232, 238 (Iowa Ct. App. 2000). Because both parties were amenable to it, we modify the order to provide Johnathan with six weeks parenting time with A.E. during her summer break from school.

Johnathan maintains the court's language regarding the default times to phone or Skype with A.E. is confusing. We modify the language as follows to clear up the ambiguity:

> Phone: Johnathan shall be entitled to no less than three (3) phone calls per week with A.E. (with "week" being defined as Monday through Sunday). The parties are encouraged to agree to a schedule for these communications, but, if they cannot, these phone calls will begin at 7:30 pm Eastern Time/6:30 pm Central Time on any three of the following: Monday, Tuesday, Thursday, Friday, or Sunday.
> Skype: Johnathan shall be entitled to one (1) Skype communication per week with A.E. (with "week" being defined as

Monday through Sunday). The parties are encouraged to agree to a schedule for these communications, but, if they cannot, these phone calls will begin at 7:30 pm Eastern Time/6:30 pm Central Time on one of the following: Wednesday or Saturday.

## B. Child Support Award

Johnathan maintains the district court "failed to amend the child support" award despite the fact that he submitted child support guideline worksheets supporting a reduction. Johnathan filed three separate financial affidavits with the court, but none of the affidavits were consistent with his testimony. Additionally, the only child support worksheet filed by Johnathan listed himself as the custodial parent and Elizabeth as the noncustodial parent.[2] We understand this as a request for the district court to modify the child support award if it modified the placement of A.E. Because A.E. remains in Elizabeth's care, we decline to consider Johnathan's claim regarding the child support obligation.

## C. Transportation Costs

Johnathan maintains the district court improperly concluded the parties should split equally the costs for transporting A.E. to and from the scheduled parenting time in Iowa. Johnathan maintains that it is unfair to split the costs because Elizabeth's "economic situation is clearly superior" and it was her "unilateral decision" to move A.E. to North Carolina. We cannot say that Elizabeth's economic situation is "clearly" superior. Johnathan was unable to testify—even generally—about how much money he earns as an in-home daycare provider, and his fiancé did not provide any information about her

---

[2] The child support worksheets Johnathan relies on were submitted by Elizabeth and her attorney; they also do not match the income claimed by Johnathan on any of his financial affidavits.

income or her contribution to the family expenses. Additionally, Johnathan admitted he is in good health and is able to work outside of the home earning more money if he so chooses. While it was Elizabeth's unilateral decision to move with A.E. out of the state, as stated above, Johnathan has failed to provide us reliable financial information so we decline to impose a greater share of the transportation costs upon Elizabeth.

### D. Admission of Evidence

Johnathan maintains the district court abused its discretion in sustaining Elizabeth's objection to a piece of evidence.[3] The evidence in question purported to be screenshots or pictures of a conversation Elizabeth had on Facebook with the mother of Johnathan's nephew. Johnathan's mother testified that she obtained the evidence after the nephew accidentally brought his mother's tablet home with him. Johnathan's mother purposely opened the application on the tablet and read the correspondence without either the mother's or Elizabeth's permission or knowledge. At trial, Elizabeth objected to the foundation of the evidence, denying that she had taken part in the conversation. The court sustained her objection and refused to admit the evidence.

For evidence to be admitted, it must satisfy foundational requirements: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter

---

[3] Johnathan also claims Elizabeth's objection to the evidence was not properly preserved because her "blanket objection to all of [his] exhibits" was in violation of court rules. If, as Johnathan maintains, the purpose of the pre-filed objections is to promote judicial efficiency, we believe the district court is in a better position to determine whether the filing has violated the rule, and we will not disturb the district court's ruling on appeal.

in question is what its proponent claims." Iowa R. Evid. 5.901(a). Here, Johnathan's mother admittedly had no part in the alleged conversation. Johnathan did not call the nephew's mother to authenticate or identify her participation in the conversation, and Elizabeth denied that such a conversation took place. We cannot say that the district court abused its discretion when it sustained Elizabeth's objection to the admission of the evidence.

## IV. Conclusion

Because Johnathan has not met the heavy burden of proving he can better minister to A.E.'s needs, we affirm A.E.'s placement in Elizabeth's physical care. We modify the district court's order to give Johnathan six weeks of parenting time with A.E. in the summer and to clear up any ambiguity in the scheduled times for calls and Skypes between A.E. and Johnathan. We remand to the district court to make the necessary modifications to the order.

Costs of this appeal are assessed to Johnathan.

**AFFIRMED AS MODIFIED AND REMANDED.**