# IN THE COURT OF APPEALS OF IOWA

No. 19-0933
Filed April 1, 2020

**JAMIE LYNN SINN,**
        Plaintiff-Appellant,

**vs.**

**RUSTY JAMES DUFF,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Jefferson County, Myron Gookin, Judge.


        Jamie Sinn appeals the district court's modification of the parties' custody decree, giving Rusty Duff physical care of the parties' children.  **AFFIRMED.**


        Cynthia D. Hucks of Box & Box Attorneys at Law, Ottumwa, for appellant.

        Paul A. Miller of Miller Law Office, Fairfield, for appellee.


        Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Jamie Sinn and Rusty Duff are the never-married parents of A.D. and L.D., born in 2007 and 2011, respectively. Upon Jamie and Rusty's agreement, the court entered a stipulated decree in 2014, giving the parents joint legal custody of the children, placing the children in Jamie's physical care, and giving Rusty "reasonable visitation with the children." In 2018, aware of serious concerns over the care of his children, Rusty petitioned to modify the decree, asking the court to give him physical care of the children. Following a one-day trial, and in line with the recommendation made by the child and family reporter (CFR),[1] the district court modified physical care, placing the children in Rusty's care. Because the parties live approximately 275 miles apart—with a one-way driving time of more than four and one-half hours—Jamie's scheduled visitation is limited to longer school breaks and summer vacation. On appeal, Jamie challenges the district court's ruling, arguing the modification of physical care is not in A.D.'s and L.D.'s best interests. Alternatively, she contends she should be awarded more visitation time. She also requests $2000 in appellate attorney fees.

When asked to change an existing custodial arrangement, we examine well-established principles guiding the modification of custodial terms:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially

---

[1] Iowa Code section 598.12B(2) (2018) allows the court to "require . . . a child and family reporter to obtain information regarding both parties' home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute concerning custody of the child or children." "A report of the information obtained shall be submitted to the court and available to both parties. The report shall be a part of the record unless otherwise ordered by the court." Iowa Code § 598.12(b).

changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). "[T]he parent seeking to change the physical care from the primary custodial parent to the petitioning parent has a heavy burden and must show the ability to offer superior care." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). As always, the "controlling consideration" is what is in the best interests of the children. *Hoffman*, 867 N.W.2d at 32. Our review is de novo. *Melchiori*, 644 N.W.2d at 368.

Yet Jamie does not challenge that conditions have materially and substantially changed so as to warrant a change in physical care. She also does not explicitly challenge the court's conclusion Rusty can provide superior care for A.D. and L.D. Her sole argument regarding the modification is that placing the children in Rusty's care is not in their best interests. We disagree.

While Jamie has been the long-time caregiver for these children, that care has not been without issue. The Iowa Department of Human Services (DHS) investigated the family multiple times, leading to a founded child abuse assessment based on the condition of the family home. Despite DHS's involvement, when the CFR visited the home—for a visit scheduled for nearly two weeks—she found unsafe conditions, beds without bedding, at least one room packed with items impeding entry, and smashed animal feces on the floor in multiple spots. When Jamie's husband's children are present, the family's small

home houses nine individuals, two or three dogs, and many cats. Additionally, boarded up broken windows and holes in the walls corroborate A.D.'s statements that Jamie's husband hits and breaks things when he is angry. Jamie and her husband both testified that his anger has improved since he began therapy and taking medication, but the CFR reported that A.D.'s fear of the husband is ongoing, noting she could "see clear fear in his face as he told me about getting choked by his step father, and [t]hat he had seen his step-father 'choke[]' his step brother to the point he had a seizure." At trial, it seemed to be Jamie's strategy to minimize this incident, as it was pointed out several times that though it had been reported to DHS, a founded child abuse report was not issued. But Jamie's own text messages corroborate that it occurred. And even if it took place before the husband began counseling, the emotional toll on A.D. seems to be ongoing.

At the same time, Rusty has not been a perfect father. His troubled past includes a felony drug conviction, homelessness, and going years without seeing A.D. and L.D. Additionally, he is unemployed, thousands of dollars behind on his child support, and has voluntary given up his rights to multiple children. But at the time of the modification trial, he maintained a stable home with his wife. The home had space for A.D. and L.D., and his wife, who is the breadwinner for their family, testified they could provide for A.D.'s and L.D's financial needs. A.D. told the CFR that he liked how "calm" it was at Rusty's house. During her testimony, the CFR said that when she spoke to A.D. at Jamie's home, the child "seemed nervous and concerned." She noted this was "very opposite of how [A.D.] was in Rusty's home."

All the same, we recognize Jamie has long been responsible for the upbringing of A.D. and L.D., including during long periods of time when Rusty was

unwilling or unable to be part of these children's lives. And as the district court noted it was in "the difficult position of having to fashion a custody arrangement that is more the least detrimental available alternative than [it is] the superior alternative." But in the end we agree with the district court's conclusion that "Rusty can provide a more stable long-term environment for the children than Jamie. His home is clean. His home does not place the children under constant stress and fear. He appears to sincerely love his children and want to do what is in the long-term best interests, despite his shortcomings." Thus we affirm the modification of physical care.

In the alternative, Jamie asks for additional schedule visitation time with the children. Because of the long distance between the two parents' homes, the court awarded Jamie four weeks of summer visitation and one-half of the children's extended school breaks (such as Christmas and spring break). On appeal, Jamie asks for all the children's summer break, all of their spring and Thanksgiving breaks, and one-half of their Christmas break. We understand Jamie's wish to spend more time with the children, but the children should spend at least part of their breaks with Rusty. We believe the visitation schedule set by the district court is in these children's best interests.

Finally, Jamie asked us to award her $2000 in appellate attorney fees. "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. As Jamie is not the prevailing party, we do not award her appellate attorney fees.

**AFFIRMED.**