# IN THE COURT OF APPEALS OF IOWA

No. 21-1055
Filed August 3, 2022

IN RE THE MARRIAGE OF BARRY RAY HUTCHENS, JR.
AND LAURA HUTCHENS

Upon the Petition of
BARRY RAY HUTCHENS, JR.,
        Petitioner-Appellee,

And Concerning
LAURA HUTCHENS,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.

        Laura Hutchens appeals from a dissolution decree.  **AFFIRMED.**

        Julio C. Gomez of Argueta & Gomez Law, Des Moines, for appellant.

        C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellee.

        Considered by May, P.J., Greer, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MAY, Presiding Judge.**

Laura Hutchens appeals from the decree dissolving her marriage to Barry Hutchens Jr. She contends the district court should have granted her physical care of the parties' two children. We affirm.

In dissolution proceedings, our review is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). But we give weight to the fact findings of the trial court, who is "greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). We will affirm unless the district court "failed to do substantial equity." *See Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

Laura argues the district court erred in granting Barry physical care of the children. When deciding physical care, "[t]he children's best interest is the 'controlling consideration.'" *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). This standard requires us to examine each family's unique circumstances on a case-by-case basis. *Id.* We consider which parent would support the other's relationship with the children as well as continuity, stability, and approximation. *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). We also consider additional factors relating to the children's safety and other needs. *See* Iowa Code § 598.41(3) (2020); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

As is often the case, our determination of physical care depends heavily on testimony and—therefore—witness credibility. *See In re Marriage of Vrban*, 359

N.W.2d 420, 422 (Iowa 1984). Accordingly, when the parties present contrasting versions of events, we generally defer to the district court's credibility determinations. *In re Marriage of Wallert*, No. 16-1669, 2017 WL 4843183, at *2 (Iowa Ct. App. Oct. 27, 2017). Here, the district court generally found Laura less credible than Barry. So, we assess their respective testimony accordingly when considering whether the court properly determined physical care.

With that in mind, we turn to Laura's claims on appeal. She contends she would be a superior caregiver for six reasons: (1) she has historically served as the children's main caregiver; (2) she "has more emotional capacity to provide for the emotional needs of the children"; (3) Barry "will not support Laura's relationship with the children"; (4) her "home is safer and better suited to the children's needs"; (5) Barry "does not prioritize [the children's] needs above his own"; and (6) "Barry is only able to care for the children due to his paramour temporarily being out of work."

We disagree. For starters, we do not think the record demonstrates that Barry places his needs above those of his children any more so than Laura does. And while it is true Barry was not as involved in the children's lives when he worked second shift, he switched to first shift in 2019 once he had enough seniority at his employment to do so. Since then, he has taken on a more active parenting role, doing things like putting the children to bed. And contrary to Laura's assertions, we do not think Barry's parenting success is attributable to his paramour staying home while unemployed.[1] Like the district court, we focus on Barry's own efforts,

---

[1] To be clear, her contributions to the children's care do not enter our calculus.

which led the district court to find "Barry has demonstrated a stronger ability to set limits and boundaries for the children than Laura."

Likewise, we question Laura's contention that she is better equipped to provide for the children's emotional needs—especially given her strong reactions during her testimony.[2]  The district court described Laura as "visibly upset, angry, and defensive" when discussing her personal difficulties with mathematics.  The court also described her testimony regarding a meeting about the children's medication as "unsettling," stating she was "visibly upset and unyielding."  And after seeing both Laura and Barry testify, the district court found Barry "appears more stable."

As for Laura's contention that Barry will not support her relationship with the children, we note that neither parent seems enthusiastic about supporting the other's parental role.  But the district court, which saw and heard the parties, found Barry has a "greater ability to support Laura's relationship with the children than Laura does toward him."

With respect to housing, we agree with Laura that her current home is better suited for the children.  In her home, each child has their own room.  Conversely, at Barry's home, the children share a converted, finished attic space with Barry's paramour's child.  A four-foot-high wall separates the space.  One side of the wall is the boys' side, and the other side is the parties' daughter's side.  While this is less than ideal, the difference in the parties' housing does not carry the day.

---

[2] Laura complains that Barry spanks the children, but she also admitted to spanking the children.

Much more troubling is Laura's history of filing claims of child abuse—none of which were confirmed—with the Iowa Department of Human Services (DHS) since Barry initiated these dissolution proceedings.  One DHS report specifically noted, "This report has strong indications of ulterior motives. . . .  This assessment presents as a custody issue.  The parents have a strong dis[d]ain for each other."  This leaves us concerned that Laura was attempting to "game the system" to come out on top without regard to how repeated DHS investigations will impact the children.

Following our de novo review, we do not conclude Laura is best suited to serve as the children's primary caregiver.  Rather, we agree with the district court that the children's best interests are served by placing physical care with Barry.

**AFFIRMED.**