**IN THE COURT OF APPEALS OF IOWA**

No. 23-0049
Filed January 10, 2024

**IN RE THE MARRIAGE OF JUSTIN MICHAEL ASCHE
AND DACIA RENEE ASCHE**

**Upon the Petition of
JUSTIN MICHAEL ASCHE,**
        Petitioner-Appellant,

**And Concerning
DACIA RENEE ASCHE,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hancock County, Rustin Davenport,

Judge.


        A father appeals a custody-modification order.  **AFFIRMED.**


        Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City,

for appellant.

        Michael J. Moeller of Laird Law Firm, P.L.C., Clear Lake, for appellee.


        Considered by Tabor, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Justin Asche appeals the modification of physical care concerning his children with Dacia Asche. Justin contests the district court's finding of a substantial change in circumstances and its physical-care decision. We find Justin waived his substantial-change argument and affirm the district court's modification placing the children in Dacia's physical care.

## I.    Background Facts and Proceedings

Dacia and Justin had been friends for most of their lives. They moved in together in late 2010 and married in 2012. When they married, Dacia had three minor children: K.H., K.H., and T.H. Justin adopted T.H. in 2012. The parties also had a child together, T.A., in 2012.

The marriage ended in January 2020. At the time, both parties lived in Garner. In a stipulation accepted by the court in its dissolution decree, Justin and Dacia both agreed to joint legal custody and shared physical care of T.H. and T.A. And while that stipulation had an alternate-weeks arrangement, each party generally had the children for half of each week. That September, Dacia began working in Minnesota with alternate weeks of remote and on-site work. Based on her work schedule, the parties switched to the stipulation's arrangement of alternate weeks of care for the children. By that December, Justin petitioned to modify the decree, asserting a substantial change in circumstances and seeking physical care of T.H. and T.A. Dacia, who intended to move to Minnesota and live there full time, agreed there was a substantial change in circumstances and sought physical care. In addition to the move, Justin and Dacia had very contentious communications and struggled with coparenting.

T.H. has a long-term medical condition relating to gastrointestinal issues. And while Justin did a lot of research and was proactive about the diagnosis, his approach was to set strict food and behavior requirements for T.H. When things didn't always go according to plan, Justin got angry with the child, frequently complained, and suggested humiliating solutions when T.H. did not meet his expectations. Dacia followed through with Justin's suggested treatment, but generally opted for "positive reinforcements" like a small treat on good days. Dacia said Justin's approach "was only fueling the fear" and making T.H.'s condition worse.

By the time of the modification hearing, Justin and Dacia both had new significant others. Justin's fiancée provided care for the children; the couple were "both very structured, very routine people." Justin's household had "a very strict schedule," "clear outlines, clear rules," and his parenting style was "very much on accountability." According to Dacia, Justin "had to have complete control over everything. Every decision was his." Dacia said that Justin "has a very short fuse and can be irrational instead of being calm and thinking his way through a situation, especially when it comes to discipline of the children." Justin admitted a history of self-medication, testifying he had been sober for more than two years. He also admitted to multiple occasions on which he destroyed some of the children's toys or used physical discipline; his apparent reaction to the children fighting was to destroy what they fought over. Justin's household also did weekly food prep with controlled snack options for the children, reportedly to deal with T.H.'s medical condition and to regulate T.A.'s weight.

Meanwhile, Dacia alternated weeks between her home in Garner and her shared residence in a Minneapolis suburb with her significant other. Dacia's approach to parenting was distinct from Justin's, and she testified her approach emphasized listening to the children's problems and supporting them. Dacia's significant other was a strict Baptist, expecting "respect" in the home, and limiting the holidays celebrated in the residence—though the children were allowed to celebrate elsewhere. One of Dacia's older children chafed under the strict rules and instead stayed at the Garner home with limited supervision during the weeks Dacia was in Minnesota.

Justin believed Dacia had a "friendship" rather than parental relationship with T.H. He criticized her for placing adult worries on the child and influencing the child about the physical-care modification. Dacia explained T.H. had been going through the messages and emails on Dacia's phone and learned about the modification action that way. Dacia also got T.H. a phone without consulting Justin—apparently in response to an iPad Justin provided T.A.—and Dacia asked T.H. to delete messages so Justin couldn't see them.

The district court observed: "Neither party has demonstrated exemplary parenting." However, considering all the testimony and its own observations, the court ruled "Dacia's nurturing approach with the children is better for the children than Justin's harsh method of parenting." The court found her flexibility a positive, and expressed concern that giving Justin physical care would be "detrimental to [Justin and T.H.'s] relationship, and the better hope is to allow Justin and [T.H.] to repair their relationship through less frequent time together." With some reservation, the court placed physical care with Dacia. Justin appeals

## II.     Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity," and our review is de novo.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  We give weight to the district court's factual findings, particularly regarding the credibility of witnesses, but we are not bound by them.  *Id*.  "The children's best interest is the 'controlling consideration.'"  *Id.* (citation omitted).

## III.     Discussion

> A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered.  The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children.

*In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (internal citation omitted).  The changed circumstances "must be more or less permanent" and "relate to the welfare of the children."  *Hoffman*, 867 N.W.2d at 32.

On appeal, Justin argues neither party met the burden to establish a substantial change of circumstances to justify a modification from joint physical care.  Justin hangs this argument on a comment by Dacia's counsel at the close of trial, when counsel indicated that, if the court found no substantial change in circumstances, Dacia would keep a residence in Iowa so she could maintain the current joint physical-care arrangement.

Dacia challenges Justin's preservation of error on this issue, noting he did not raise the issue below.  On the merits, Dacia responds there was a substantial change in circumstances because she has better employment and a relationship in Minnesota and intends to move there.   She also asserts the breakdown in

communication between her and Justin is sufficient to sustain a finding of substantial change in circumstances.

Justin further contends that, should we find a substantial change in circumstances exists, he should have been given physical care of T.H. and T.A.

### A.     Substantial Change in Circumstances

We first address the substantial-change-in-circumstances question. Dacia asserts the issue was not preserved because both parties claimed a change in the complaint and answer. From the start, the parties agreed there was a substantial change of circumstances, and both fought for physical care of the children. At the end of trial, the court sought to clarify the parties' positions, and both attorneys agreed the parties had effectively conceded or stipulated to a substantial change in circumstances. The only differing statement in the record was Dacia's testimony that, if the court found no change in circumstances, she would maintain an Iowa residence—but that was framed as an "if-then" statement, rather than any concession on whether a substantial change had occurred.

"Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). In his petition to modify, Justin alleged a substantial change of circumstances and he consistently argued that position through trial. And he submitted two proposed parenting plans to the court, neither of which contemplated continuing shared care. Dacia also agreed there was a change in circumstances warranting modification of physical care. Because Justin affirmatively alleged a substantial change in circumstances at trial and never claimed otherwise below, we do not consider his contrary claim on appeal. *See*

*McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378–79 (Iowa Ct. App. 1989) ("[I]t is elementary a litigant cannot complain of error which he has invited or to which he has assented.").

### B.    Physical Care

"'Physical care' means the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(7) (2022).   The awarded parent's right and responsibilities include maintaining the primary residence of the child and the "right to determine the myriad of details associated with routine living, including such things as what clothes the children wear, when they go to bed, with whom they associate or date, etc." *In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007).  "The criteria for determining child custody are applied in modification proceedings," including the factors found in Iowa Code section 598.41 and other modification cases.  *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996).

Justin urges several arguments on this issue.  He contends the behaviors the court found concerning regarding physical discipline have been mitigated by his recent sobriety and that he has made great strides in counseling.  Justin further claims the court's characterization of his approach to T.H.'s condition was "unfair" and he argues Dacia used the same approach as he did.  He maintains he and T.H. have "regular and positive communication," and Dacia pressured T.H. into expressing a preference to be with her.  He also criticizes Dacia's parenting of her other children, insists "she tries to poison her children against" him, and faults her approach to school and homework for the children.  In other words, he tries to

make himself appear the superior parent by highlighting Dacia's deficiencies, rather than focusing on his own strengths.

Dacia argues her "warm and nurturing nature" fosters the children's emotional well-being. She discusses the importance of maintaining the strong sibling bond T.H. and T.A. have with their older half-siblings. She also addresses Justin's behavior, calling it "questionable, ill considered, and reactionary."

The district court made critical factual findings as to both parents, acknowledging problems with the care provided by each. The court found "Dacia has undermined Justin's relationship with [T.H.]" and retaliated against Justin by revealing information about T.H.'s genetic father. And after hearing all the testimony, the court observed "Justin has a much more rigid parenting philosophy than does Dacia. Justin is controlling and seems to expect everything to be nice and tidy. He has strong opinions that his solutions are the best solutions." The district court expressed concerns over Justin's "history of unnecessary physical contact with the children resulting in injury" and decisions to break toys over less violent options. And the court also acknowledged that Dacia's "interference with the relationship between Justin and [T.H.] is tragic." The court concluded "[t]he parties have not acted well towards each other."

We agree with the district court. Neither party was blameless in the failure of communication and rancor leading to this modification, and neither has been particularly supportive of the other parent's relationship with the children. While Justin may have made some progress, T.H. still expressed fear of Justin's violent outbursts. And Justin's strict approach to T.H.'s medical condition did not appear to work as desired and caused the child shame. Meanwhile, Dacia addressed

issues when T.H. pressed for answers about her biological father and provided a supportive environment.  The children are also close to the older siblings who live with Dacia, and Dacia appears better prepared to adapt to the children's needs.

We affirm the district court's modification placing the children in Dacia's physical care.

**AFFIRMED.**