**IN THE COURT OF APPEALS OF IOWA**

No. 17-0358
Filed August 16, 2017


IN RE THE MARRIAGE OF CHRISTIAN A. MARSH
AND SALLY J. MARSH

Upon the Petition of
CHRISTIAN A. MARSH,
     Petitioner-Appellant,

And Concerning
SALLY J. MARSH,
     Respondent-Appellee.
_____


Appeal from the Iowa District Court for Clinton County, Henry W. Latham II, Judge.


Christian Marsh appeals a district court order denying his request to modify the physical-care provision of the decree dissolving his marriage to Sally Marsh. **AFFIRMED.**


J. Drew Chambers of Holleran, Shaw, Murphy & Stoutner, Clinton, for appellant.

James D. Bruhn of Farwell & Bruhn Law Firm, Clinton, for appellee.


Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

He went from being unemployed and living with his parents to holding a professional job, buying a house, and starting a family with his new wife. Christian Marsh contends his increased stability constitutes a material and substantial change in circumstances not contemplated seven years ago when he and Sally Marsh divorced just four months after the birth of their son, N.J.M. Christian appeals the district court's denial of his request to modify the physical-care provision of the divorce decree. Although Christian's steady employment, housing, and family commitment may qualify as a substantial change in circumstances, we do not find N.J.M.'s best interests would be served by switching from placement in Sally's physical care to shared physical care. Accordingly, we affirm the district court's order.

## I.     Facts and Prior Proceedings

Christian and Sally Marsh divorced in 2010. They have one child together, N.J.M., who is now seven years old. At the time of the decree, Christian did not have a job and stayed with his parents. Sally worked for the local school district, teaching students with behavior disorders.

The decretal court awarded the parties joint legal custody of N.J.M. and Sally physical care.[1] The court granted Christian visitation on alternating weekends, as well as one to two evening visits each week. Over the summers, Christian was to have one full week of visitation, increasing to two

---

[1] Christian did not seek either physical care or shared physical care at the time of the dissolution trial. He testified his attorney told him "it was highly unlikely that that would happen."

nonconsecutive weeks once N.J.M. turned three. The court ordered Christian to pay $300 a month in child support.

In the ensuing years, Christian furthered his education and gained employment as a registered nurse. Sally continued to work as a teacher. A few months after the entry of the decree, Sally agreed to allow Christian to exercise additional visitation, as his schedule allowed, and from that point on, he generally had N.J.M. for several overnight visits each month. Christian attended N.J.M.'s school conferences and, when his schedule allowed it, N.J.M.'s medical appointments and extracurricular activities. Christian never exercised his allotted two weeks of summer visitation but, on at least two occasions, took N.J.M. on multiple-day out-of-town trips.

On May 27, 2016, Christian filed an application for modification of the decree, alleging "material and substantial changes in circumstances entitling [Christian] to be named as the person having principle physical care of [N.J.M.] as well as requiring [Sally] to pay child support for and on behalf of the minor child." Sally filed a counterclaim requesting additional child support from Christian due to the increase in his income.

Christian remarried in September 2016, and by the time of the modification hearing in February 2017, Christian and his new wife were expecting a baby and in the process of purchasing a home.

At the modification hearing, Christian revised his request to shared care rather than physical care, reasoning his visitation with N.J.M. had been "approaching" 50% of the time. The parties agreed Christian had between eight and twelve overnight visits with N.J.M. each month leading up to the modification

hearing, but the parties disagreed about the amount of visitation taking place before Christian petitioned the court to modify the decree. Christian contended Sally had allowed slightly more visitation in the past, while Sally maintained the amount of visitation had remained steady. Christian did not have documentation to support his claim.

Both Christian and Sally testified they believed the other was a good parent and agreed they were able to communicate well about N.J.M. The parties lived just a few miles apart, and both had extended family in the area. These circumstances allowed Christian to exercise a relatively flexible visitation schedule over the years.

But Sally did not believe shared care would be in N.J.M.'s best interests. She explained: "It throws our schedules off. It throws [N.J.M.'s] schedules off. And it's just better for him not to be gone for big chunks of time." Sally also questioned Christian's motive for requesting the modification. She testified Christian said he desired the change because his child-support-payment requirement "reflects badly when he looks for a house loan."

Following the hearing, the district court denied Christian's modification application and increased his monthly child-support obligation to $640.51 per month. The court reasoned:

> Christian has failed to establish a material and substantial change in circumstances since the entry of the decree but for his change in income. It was reasonable for the [c]ourt to expect he would not be living with his parents for an extended period of time and that he would obtain gainful employment. The only material issue that could not have been anticipated by the [c]ourt would be the level of income which Christian would achieve.

The court found "no material and substantial change in circumstances as to the care arrangement for N.J.M.," noting "[t]he evidence fails to show there is a shared care arrangement that has been established in the past or currently" and "[t]he [c]ourt does not find any credible evidence to substantiate Sally has withheld visitation as a result of the filing of the pending action." The court commended the parents for their ability to communicate effectively for N.J.M.'s benefit, opining: "If this communication results in Christian having more time to spend with his son, that is beneficial for everyone involved." But the court declined to award Christian extraordinary visitation because he did not request it. The court added: "If the parties are able to communicate effectively in the future, it may be in everyone's best interest to potentially reach an agreement as to extraordinary visitation."

Christian now appeals the district court's denial of his custody-modification request.

## II.    Scope and Standard of Review

Because proceedings to modify custody are equitable in nature, our review is de novo. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We are not bound by the district court's fact findings, but we give them weight, particularly when considering witness credibility. *See id.* The child's best interests are our "controlling consideration." *See id.* (citation omitted).

## III.    Analysis

Custody should only be modified if it will result in the child receiving superior care. *See In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct. App. 1998). Our cases place a heavy burden on the parent seeking modification

based on the tenet that "once custody has been fixed it should be disturbed for only the most cogent reasons." *In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009). The question on appeal is whether Christian carried the burden of proving, by a preponderance of the evidence, circumstances since the entry of the decree had so materially and substantially changed that N.J.M.'s best interests would now be best served by modifying custody. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). Christian may only rely on circumstances that (1) were not contemplated by the court when the decree was entered, (2) are more or less permanent, and (3) relate to the child's welfare. *See id.*

Christian argues he met his burden of proving a material and substantial change in circumstances because "he is now employed, has remarried, has a child on the way, and has purchased a home." In addition, Christian asserts N.J.M. "has been visiting essentially half the time for the last several years." Sally contends the milestones Christian identifies "are all reasonable and ordinary changes which any trial court would contemplate" and, further, do not warrant modification of custody because Christian has not established a superior ability to care for N.J.M.[2]

The district court decided Christian failed to establish a material and substantial change in circumstances since entry of the decree "but for his change

---

[2] Sally also contends Christian failed to preserve his argument for shared physical care and urges us to consider only Christian's request for physical care in his application for modification. Although Christian did not ask for shared care in his initial filing, he raised the issue to the district court, and the district court decided the issue. We find the issue properly preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

in income." In rejecting his modification request, the district court found it was reasonable for the decretal court to expect Christian would not be living with his parents for any extended period of time and that he would find gainful employment. We disagree the identified changes were all contemplated by the decretal court.[3] Our court has previously found that a parent's achievement of greater stability in employment and housing can constitute a material and substantial change not within the contemplation of the court at the time of the entry of the divorce decree. *See, e.g.*, *In re Marriage of Custer*, No. 08-0553, 2009 WL 138454, at *7 (Iowa Ct. App. Jan 22, 2009).

But we agree with Sally's further point—Christian's greater stability does not compel a switch to shared physical care. Although Christian achieved positive changes in his life in the seven years between the entry of the dissolution decree and the modification proceedings, he has not met his burden of proving, because of those changes, modification would result in superior care for N.J.M. Christian acknowledges Sally is a good mother. She has been flexible and generous with Christian concerning visitation, and that outlook has helped foster a healthy relationship between Christian and N.J.M. *See* Iowa Code § 598.41(1)(a) (2017) (providing the goal of visitation is to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents"). By all accounts, N.J.M. is thriving.

Moreover, we have reservations about Christian's motives for seeking the custody modification. *See In re Marriage of Capper*, No. 08-0128, 2008 WL

---

[3] Deferring to the district court's credibility determinations, we agree Christian failed to establish a de facto shared care arrangement with Sally or to demonstrate that Sally restricted his visitation with N.J.M.

3917781, at *3 (Iowa Ct. App. Aug. 27, 2008) (finding children's best interests would not be served by granting father shared physical care when his motives for modification were "ambiguous, and at worst punitive"). We credit Sally's testimony that Christian expressed personal financial reasons for seeking to change N.J.M's physical-care arrangement and Christian's child-support obligation. Overall, we find no reason to disturb the current arrangement.[4]

Lastly, Sally requests appellate attorney fees. Such an award lies in our discretion and is based upon the merits of the appeal, Sally's needs, and Christian's ability to pay. *See in re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Having considered these factors, we order Christian to pay $2000 toward Sally's attorney fees, as well as the costs of this action.

**AFFIRMED.**

---

[4] Because Christian has not raised the issue, we do not consider whether these circumstances warrant modification of the visitation provision of the dissolution decree. Nor do we consider whether Christian is entitled to "extraordinary visitation" credit under the child support guidelines. *See* Iowa Ct. R. 9.9 (defining "extraordinary visitation" as court-ordered visitation for a noncustodial parent exceeding 127 days per year).