# IN THE COURT OF APPEALS OF IOWA

No. 17-0653
Filed October 11, 2017

IN RE THE MARRIAGE OF MELISSA M. ROETMAN
AND GABRIEL D. ROETMAN

Upon the Petition of
MELISSA M. ROETMAN,
        Petitioner-Appellee,

And Concerning
GABRIEL D. ROETMAN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Plymouth County, Duane E. Hoffmeyer, Judge.

        Gabriel Roetman appeals the custody and property-distribution provisions of the decree dissolving his marriage to Melissa Roetman. **AFFIRMED.**

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

        Amanda Van Wyhe of Van Wyhe Law Firm & Mediation Center, PLC, Sioux City, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Gabriel Roetman appeals the custody and property-distribution provisions of the decree dissolving his marriage to Melissa Roetman. He contends the district court should have granted him and Melissa joint physical care of their child rather than placing the child in Melissa's physical care. He also argues the district court should not have included the value of his premarital property in its property-division calculation. Upon our review, we affirm.

### I. Standard of Review.

We review appeals from dissolution decrees, including challenges of child-placement and property-division determinations, de novo. *See* Iowa R. App. P. 6.907; *see also In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013); *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). This entails an examination of the whole trial record to decide anew the issues raised on appeal. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Despite our de novo review, we give strong consideration to the district court's fact findings, especially with regard to witness credibility. *See id.*; *see also* Iowa R. App. P. 6.904(3)(g). This is because the district court, in making its credibility assessment, has the distinct advantage of listening and observing each witness's demeanor firsthand, while we must rely on a cold transcript. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). In child-custody cases, the first and foremost consideration is the child's best interest. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see also* Iowa R. App. P. 6.904(3)(o). In determining how the parties' property should be distributed, the trial court has considerable

latitude and should only be reversed if "there has been a failure to do equity." *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). Notably, because we base our decision on the unique facts of each case, precedent is of little value. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## II. *Background Facts and Proceedings*.

On our de novo review, we make the following findings of fact. *See Kimbro*, 826 N.W.2d at 699. Melissa and Gabriel met in 2009 and began dating that spring; Melissa was twenty-five, and Gabriel was twenty-seven. Melissa moved into Gabriel's apartment in the fall, moving from Mason City to LeMars to live with Gabriel. In November 2010, Gabriel purchased a house in Brunsville, and the parties moved there. The parties married in April 2014 and had a daughter in September 2014.

In April 2016, Melissa filed a petition for dissolution of marriage. Trial was held in January 2017, with physical care of the parties' child and distribution of their property as matters in dispute. They agreed there should be joint legal custody but disagreed on whether there should be shared physical care or physical-care placement with Melissa. Thereafter, the district court entered its decree dissolving Melissa and Gabriel's marriage. The district court determined Melissa had been the child's primary caregiver and placed the child in Melissa's physical care, awarding Gabriel liberal visitation. Additionally, the court determined "the full premarital value should be included in the division of assets and liabilities of the parties. To do differently would seriously disadvantage Melissa in the cost-sharing arrangement she and Gabriel had while they were

together and married." Based upon the properties' valuations, the court directed Gabriel to make a property-equalization payment to Melissa of $64,963.47.

### III. Discussion.

Gabriel now appeals, asserting the district court should have placed the child in the parties' joint physical care rather than Melissa's physical care. Gabriel also argues the court should not have included some property in the equalization determination, maintaining the property was his before their marriage. We address the arguments in turn.

### A. Physical Care.

"Physical care" is "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(8) (2016). If joint physical care is awarded, "both parents have rights to and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, [and] providing routine care for the child." Id. § 598.1(4). Even though the parties disagree on some matters, these problems should be able to be resolved to the benefit of the child. See In re Marriage of Gensley, 777 N.W.2d 705, 716 (Iowa Ct. App. 2009). "When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." Hynick, 727 N.W.2d at 577.

In determining whether to award joint physical care or physical care with one parent, the district court is guided by the factors enumerated in section 598.41(3), as well as other nonexclusive factors set out in In re Marriage of Winter, 233 N.W.2d 165, 166-67 (Iowa 1974), and In re Marriage of Hansen, 733

N.W.2d 683, 696-99 (Iowa 2007) (holding that although section 598.41(3) does not directly apply to physical care decisions, "the factors listed [in this code section] as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child"). Although consideration is given in any custody dispute to allowing the child to remain with a parent who has been the primary caretaker, *see Hansen*, 733 N.W.2d at 696, the fact that a parent was the primary caretaker of the child prior to separation does not assure an award of physical care. *See In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). The ultimate objective of a physical care determination is to place the child in the environment most likely to bring her to healthy physical, mental, and social maturity. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999); *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). As each family is unique, the decision is primarily based on the particular circumstances of each case. *Hansen*, 733 N.W.2d at 699.

Here, though framed as a challenge to the child's best interests, the heart of the matter is Melissa's request for physical care of the child *and* her desire to move them to the area where she grew up—approximately three and one-half hours north of the home the family shared during the marriage. Melissa's parents still live in the house where she grew up, and their location is also closer to Melissa's siblings' residences. The record evidences that Melissa is very close to her family, and despite the distance between their locations, Melissa and her family have visited regularly. Melissa has no relatives near Brunsville. Additionally, Melissa learned her employer—a national chain hotel—had sold the business, and the new owners were to take ownership a few months from the

date of trial. Importantly, the new owners were requiring the hotel's existing employees to reapply for their positions, and there was no guarantee that Melissa would be rehired for the position. Melissa believed the uncertainty of her employment coupled with the parties' dissolution and their child's young age made it the opportune time to relocate. Nevertheless, it is clear Melissa would have stayed in the Brunsville area if the court determined she could not relocate with the child.

There is no real dispute that Melissa was the child's primary caregiver. Gabriel was frightened to care for the infant on his own, and generally if Melissa was called into work, she took the child with her or left the child in the care of a friend rather than leave the child with Gabriel. Though Gabriel has family near him, the record does not indicate his family was routinely involved in the child's care. After the parties' separated, Gabriel became more comfortable with fatherhood and was more involved with the child. Nevertheless, until Melissa announced she wanted to move away, Gabriel agreed Melissa should have physical care of the child; only then did Gabriel express a desire for joint physical care.

The record shows that the parties generally communicated well, and the few issues that arose were generally prompted by Gabriel. Melissa was flexible with changing visitation dates if Gabriel needed and also gave Gabriel extra visits. Melissa also made efforts for the child to see Gabriel through a video chat.

Ultimately, the district court had a few choices. It could require the child stay in the Brunsville area, thereby disallowing Melissa to move, where Melissa's employment was uncertain and she had no immediate family nearby to help her

care for the child, but she was guaranteed at least Gabriel's limited involvement with the child. Or, as suggested by Gabriel, the court could grant the parties' shared physical care and permit Melissa to move, with the parties' rotating where the child would live on a weekly basis and driving the child back and forth each week. Alternatively, as requested by Melissa, the court could grant Melissa physical care of the child and permit them to move where Melissa's employment was also uncertain but where she had family available to assist her, with Gabriel granted liberal visitation rights, which would essentially continue the status quo. The district court chose the last option.

Upon our de novo review of the entire record, and considering the applicable factors set out in section 598.41, *Winter*, and *Hansen*, we also conclude Melissa should be granted physical care and permitted to move with the child. Melissa's reasons for wanting to relocate are sound and not motivated out of a desire to deprive Gabriel from access to the child. *See Hoffman*, 867 N.W.2d at 33 (declining modification and continuing physical-care placement of the children with the mother, despite mother's move with children finding "no credible evidence . . . tending to prove Tracy moved the children . . . to defeat Ernie's visitation rights or undermine his relationship with the children. . . . Although Tracy did not relocate . . . to realize a more lucrative employment opportunity . . . , her motivations for the move were no less legitimate"). Moreover, issues of physical care "are not to be resolved upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*." *Id.* at 34 (emphasis in original). Driving the child three and one-half hours each week back and forth is clearly not in the child's best interest. While there is no

question Gabriel loves his daughter, his limited involvement in her life up to this point and his ability to get along with Melissa simply does not justify the constant shuffling, given the distance. Allowing Melissa to relocate with the parties' child will allow the child to maintain her close relationship with Melissa, who has been her primary caretaker since her birth, and it essentially continues the parties' existing arrangement. *See id.* Gabriel has been granted liberal visitation with the child, and Melissa testified she was not opposed to continuing to allow video chats between Gabriel and the child when the child was not with Gabriel. Gabriel even mentioned the possibility of moving. For these reasons, we agree with the district court that placing the child in Melissa's physical care and permitting them to relocate was in the child's best interests.

### B. Premarital Property.

Gabriel also argues the court should not have included various properties' valuations in the property-division calculation, asserting the assets were acquired prior to the parties' marriage. Iowa Code section 598.21(5) requires the court to divide "all property, except inherited property or gifts received by one party" equitably between the parties. "This broad declaration means the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *Schriner*, 695 N.W.2d at 496.

In other words, premarital property is not set aside like gifted and inherited property. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007); *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). The district court should not separate a premarital asset from the divisible estate and automatically

award it to the spouse who owned it prior to the marriage. See *Fennelly*, 737 N.W.2d at 102; *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Rather, property brought into the marriage by a party is merely a factor among many to be considered under section 598.21(5). *See Schriner*, 695 N.W.2d at 496. "This factor may justify full credit, but does not require it." *Miller*, 552 N.W.2d at 465. Other factors under section 598.21(5) include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case. *See Fennelly*, 737 N.W.2d at 102.

At trial, both parties agreed that Gabriel bought the house in 2010 for $98,000, paying $5000 down. The parties also agreed the house was valued at $115,990 at the time of trial, and the remaining balance on Gabriel's mortgage was $33,120. Gabriel argued the marital equity of the house should be based upon the total of the mortgage payments he made during the marriage, equaling $27,696. But he also added into his equalization calculation the entirety of the remaining mortgage balance of $33,120, thus netting a negative total value for the home. Conversely, Melissa asserted the home should be valued at $115,990, with the value awarded to Gabriel less the mortgage balance, thus a net total of $82,870. The court basically agreed with Melissa, noting that although she made no payments on the mortgage or real estate taxes, she paid the other bills on the parties' consumable items—i.e., utilities, groceries—for which there is no equity value. On appeal, Gabriel asserts the court's division was inequitable, arguing part of the value of the house should be considered premarital property and not included in the calculation. Specifically, he argues

$55,174 should be set aside as premarital property, which he calculated as follows: the current value of the house of $115,990 less the mortgage balance of $33,120 less the amount he paid in mortgage payments of $27,696. He argues that amount should not be included at all in the property-division calculation.

Gabriel also argued some of the tools purchased for his on-the-side-repair business during the parties' relationship should not be included in the property division, asserting they were premarital assets. He also asserted other items purchased during the parties' relationship but before they were married should not be included in the division, such as the vehicle he purchased in 2010 and his motorcycle purchased in 2012.

On our de novo review, we have considered the applicable section 598.21(5) factors in this case—including but not limited to the length of the parties' marriage, as well as each party's age, health, earning capacity, premarital property, contribution to the marriage and to the other's increased earning power, and other economic circumstances—and we find the district court's division of the property's value to be equitable. It is true the parties' marriage was of short duration, but the parties' lived together almost five years prior to the marriage. Additionally, when they began living together, they lived in an apartment and were in school. They did not really have any assets, except Gabriel's tool chest that the court did not include in its calculation. As the district court reasoned, though Melissa made no direct payments related Gabriel's mortgage or the related real estate taxes, she covered other expenses that Gabriel would have had to made if she had not. The court pointed out the parties did not commingle funds, but the parties' also did not reconcile their contributions

to establish if they were making equal contributions. The court found Gabriel was able to make payments and gain equity in his vehicles and tools because Melissa was making other payments during the marriage. We agree with the district court's conclusion and find the court's property-division calculation was equitable. We will therefore not disturb its determination.

## IV. Conclusion.

Because we agree with the district court that placing the parties' child in Melissa's physical care and permitting her to relocate with the child was in the child's best interests, we affirm the court's placement of the child in Melissa's physical care. Additionally, because we find the court's property-division calculation was equitable, we will not disturb its equalization-payment determination. Accordingly, we affirm the decree in all respects. Costs on appeal are assessed to Gabriel.

**AFFIRMED.**