# IN THE COURT OF APPEALS OF IOWA

No. 18-0234
Filed February 6, 2019

IN RE THE MARRIAGE OF BROOK ANN EGGELING
AND ADAM CONRAD EGGELING

Upon the Petition of
**BROOK ANN EGGELING, n/k/a BROOK ANN LAPKE,**
 Petitioner-Appellant/Cross-Appellee,

And Concerning
**ADAM CONRAD EGGELING,**
 Respondent-Appellee/Cross-Appellant.
_____

 Appeal from the Iowa District Court for Crawford County, Jeffrey A. Neary,

Judge.

 A former wife appeals a modification order granting physical care of their

two children to her former husband; the former husband cross appeals.

**AFFIRMED ON BOTH APPEALS.**

 Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, PC,

Carroll, for appellant.

 Michael J. Riley and Bryan D. Swain of Salvo, Deren, Schenck, Gross,

Swain & Argotsinger, PC, Harlan, for appellee.

 Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

Brook Lapke and Adam Eggeling have two children: eleven-year-old A.E. and seven-year-old B.E. After their divorce in 2014, Brook and Adam exercised joint physical care, which worked well for three years. But in June 2017, Brook moved ninety miles from their home town, prompting Adam to seek modification of the shared-care arrangement. The district court granted physical care of the children to Adam and liberal visitation to Brook. Challenging that decision, Brook argues the district court placed too much weight on geography and too little emphasis on which parent would be the better caregiver. She asks us to award her physical care. Short of that, she seeks expanded weekend and summer visitation. Adam cross-appeals, asserting Brook's mid-week overnight visit is too taxing on the children given the distance between their homes.

Deciding physical care after Brook's move is difficult because both Brook and Adam are able and active parents. The district court appropriately assessed "which setting and parenting skill set is best for the children since the parties no longer live within a short distance of each other." After reviewing the record de novo, but giving appropriate deference to the district court's ability to see the parties testify in person,[1] we find no compelling reason to disturb the physical-care and visitation provisions in the district court's modification rulings. Accordingly, we affirm on both the appeal and cross appeal.

---

[1] "Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We review equity cases de novo. Iowa R. App. P. 6.907. Although we reach our own findings of fact, we give weight to the credibility determinations of the district court. *Hoffman*, 867 N.W.2d at 32. Our controlling consideration remains the children's best interests. *Id.*

## I.   Facts and Prior Proceedings

Brook and Adam married in 2006 and divorced in 2014.   During the marriage, they had two children: A.E., born in 2007, and B.E., born in 2011.  Brook worked as the radiology manager at the community hospital.  Adam was employed by the Charter Oak schools, first as a business teacher and eventually as an elementary school principal.   At the time of the divorce, both parties lived in Crawford County and agreed to joint physical care.

By his own admission, Adam struggled with the divorce.  He pleaded guilty to criminal mischief in 2015 for vandalizing a car belonging to Brook's new boyfriend, Steve, and later to operating while intoxicated.[2]  But Adam successfully discharged the deferred judgments in both cases and retained his employment during that time.  Adam also started living with Jessica, who has three children of her own.

In June 2017, Brook quit her job and moved to Papillion, Nebraska, to be with her then fiancé, Steve, an emergency room physician.  Papillion, a suburb of Omaha, is about ninety miles away from Denison, where Adam continued to live. After the move, Brook decided to be a "stay-at-home mom."  Brook married Steve in July 2017.

The same month, Adam applied to modify the physical-care arrangement for A.E. and B.E.  The application alleged Brook's move to Nebraska constituted a substantial change in circumstances, and Adam sought physical care of the children.  The application also expressed uncertainty about where the children

---

[2] Brook did not ask for modification of joint physical care based on those incidents.

would attend school in the fall of 2017. Pending a final ruling on Adam's modification request, the district court issued a temporary order in August directing the children remain enrolled in the Denison-Schleswig School District.

The court held an evidentiary hearing in November 2017. Of special concern to both parents was A.E.'s academic progress. The fourth grader struggled with reading and math and had an individualized education plan (IEP). Brook had investigated tutoring opportunities for A.E. in the Omaha area. Adam testified to emailing A.E.'s teachers for weekly progress reports and was concerned A.E. would lose even more ground by moving to a new school.

The district court granted physical care of A.E. and B.E. to Adam. The court awarded Brook visitation every other weekend from Friday to Monday morning, as well as two weeks per month in June, July, and August. In response to Brook's motion to amend the ruling under Iowa Rule of Civil Procedure 1.904(2), the district court added a mid-week overnight visitation during the school year.

Brook now appeals, contesting the grant of physical care to Adam, or alternatively, asking for additional visitation. Adam cross appeals, seeking to eliminate the Wednesday overnight visitation.

## II. Analysis

### A. Modification of Physical Care

In the context of divorce, physical care is the right and responsibility of a parent to provide a home and routine care for the minor children. Iowa Code § 598.1(7) (2018). "The parent awarded physical care maintains the primary residence and has the right to determine the myriad of details associated with routine living, including such things as what clothes the children wear, when they

go to bed, with whom they associate or date, etc." *In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007).

After their divorce, Adam and Brook had joint physical care of their two children. When Brook moved to Nebraska, Adam applied to modify the decree. As the party seeking modification, the burden fell on Adam to establish, by a preponderance of the evidence, circumstances had so materially and substantially changed since the decree that it was in the children's best interests to change the custody arrangement. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Adam was required to show the changed circumstances were not contemplated by the decree, were more-or-less permanent, and related to the children's welfare. *See id.* The parties agree Brook's move constituted a material and substantial change in circumstances.

When, as here, the parents have shared equally in the children's physical care under the original decree, the next question for the court faced with the modification request is which parent can render "better" care.[3] *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa 2002). In making the physical-care decision, courts are guided by the factors in Iowa Code section 598.41(3), as well as other nonexclusive factors listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The ultimate goal of a physical-care determination is to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity. *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct.

---

[3] This scenario is in contrast to a situation where one party has had custody—in such cases, "A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well[-]being." *Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 160 (Iowa 1983)).

App.1996). As each family is unique, the decision hinges on the particular circumstances of each case. *Hoffman*, 867 N.W.2d at 32; *see also Hansen*, 733 N.W.2d at 699.

In the modified decree, the district court rejected Brook's assertion she was "a better physical custodian than Adam" because she no longer needs to work outside the home.[4] The court also expressed skepticism about Brook's efforts to paint her move as offering more opportunities for the children because of Papillion's proximity to Omaha. The court opined, "Brook's move to Papillion was clearly in her own interests and the potential benefits or detriments for the children should they relocate to Papillion did not appear to have been considered or weighed in that decision." The court concluded the children "should continue to reside in Denison and accordingly reside with Adam as their primary physical custodian."

On appeal, Brook contends, "[T]he district court penalized her for remarrying and wanting to move to the city where her new husband resides." She admits the move would be "disruptive, require adjustment by the children, and limit their access to Adam." But she insists such "negative factors inhere in any long-distance move by a custodial parent." *See In re Marriage of Frederici*, 338 N.W.2d 156, 160 (Iowa 1983). She also emphasizes her move was not intended to undermine Adam's relationship with the children. *See Hoffman*, 867 N.W.2d at 33 (concluding ex-wife's "motivations to live under the same roof with her new husband and to eliminate financial pressures associated with maintaining two

---

[4] The court also stressed, "[T]he fact that Brook does not work outside the home is not to be held against her."

separate households were quite appropriate under the circumstances"). Brook also argues Adam's dislike for Steve is a factor to consider in awarding physical care.[5]

For his part, Adam defends the district court's modification, arguing because neither parent was "clearly superior to the other," the court rightly chose to maintain continuity for the children in the community and school where they are established socially and academically. He asserts his work schedule for the Charter Oak school district will be less demanding in the future, and he is committed to providing for the children's day-to-day needs.

We do not read the district court's modified decree as penalizing Brook for her relocation to Nebraska. "It is not a matter of reward or punishment." *In re Marriage of Bowen*, 219 N.W.2d 683, 687 (Iowa 1974) (abandoning inference children are better served by awarding custody to their mothers instead of their fathers). Instead, after hearing both sides, the district court reasonably concluded continuing the children's current situation tipped the scales toward assigning physical care to Adam when both parents offered an equally strong commitment to nurturing the children. The district court appreciated A.E.'s academic challenges, and factored those into its decision a familiar school setting would be in the child's best interest.

In disputing the district court's rationale, Brook relies heavily on *Frederici* and *Hoffman*. But in those cases, one parent had physical care of the children and the question was whether their relocations merited a change in physical care. *See*

---

[5] The district court found Adam and Steve had "buried the hatchet" and now were able to maintain a civil relationship for the sake of the children.

*Frederici*, 338 N.W.2d at 160; *Hoffman*, 867 N.W.2d at 29. By contrast, here, Brook's relocation triggered the need to abandon joint physical care. The district court had to choose one physical-care parent. Choosing Adam was reasonable under the circumstances and served the children's best interests.

### B. Visitation

We next turn to the parents' competing requests to alter the visitation schedule. As an alternative to physical care, Brook seeks expanded time with the children on weekends, as well as during summer and winter breaks. She argues the mandate in Iowa Code section 598.41(1)(a) for "maximum continuing physical and emotional contact with both parents" supports her request. Adam objects to Brook's request for additional visitation. And in his cross appeal, he asks us to eliminate the Wednesday overnight and to end weekend visitation at 6:30 on Sunday evening if the children have school on Monday. Adam contends the midweek visitation places a strain on the children, but did not offer evidence supporting that contention other than the drive takes about ninety minutes each way.

We reject both parents' invitations to tinker with the visitation times. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994) (recognizing "reasonable discretion of the trial court to modify visitation rights" and declining to "disturb its decision unless the record fairly shows it has failed to do equity"). The current schedule maximizes the children's opportunity to enjoy time with both parents—during the school year and when they are on vacation. We see no failure to do equity.

### C. Attorney Fees

Brook claims an entitlement to trial and appellate attorney fees. She asserts Adam has a greater ability to pay. Adam argues the district court correctly ordered the parties to pay their own trial attorney fees. He asks us to assess appellate fees to Brook because of his "obligation to defend the bulk of the trial court's decision."

In modification proceedings, the district court "may award attorney fees to the prevailing party" in a reasonable amount. Iowa Code § 598.36. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). We consider the parties' respective abilities to pay, whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the district court's decision on appeal. *Id.* After considering these factors, we conclude Brook and Adam should pay their own attorney fees. We recognize the merit to Adam's position on the physical-care issue, but do not find Brook in a superior financial position to pay for his representation.

We divide appellate costs equally between the parties.

**AFFIRMED ON BOTH APPEALS.**