# IN THE COURT OF APPEALS OF IOWA

No. 20-1424
Filed June 30, 2021

**IN RE THE MARRIAGE OF CLINTON JEREMIAH KARAS**
**AND NATALIE ELISHA KARAS**

**Upon the Petition of**
**CLINTON JEREMIAH KARAS,**
    Petitioner-Appellee,

**And Concerning**
**NATALIE ELISHA KARAS, n/k/a NATALIE ELISHA ERDAHL,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Amy Zacharias, Judge.

In this dissolution of marriage modification proceeding, the mother appeals from the district court's modification of the physical care provisions relating to the parties' children. **AFFIRMED.**

Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, for appellant.

Kyle Focht, Council Bluffs, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

In this dissolution of marriage modification action, Natalie Erdahl appeals from the district court's order modifying the terms of the parties' modified decree related to physical care of their children. Natalie challenges the court's findings that there were material and substantial changes in circumstances justifying modification. She further argues that any changes were not permanent and the district court recalled facts incorrectly in reaching its decision. Natalie requests reversal of the district court's order changing physical care of the children from her to the children's father and requests appellate attorney fees.

**I.      Background Facts and Proceedings**

Natalie and Clinton Karas divorced in 2017. At that time, the parties stipulated that Natalie would have physical care of their son and daughter (born in 2011 and 2008, respectively) with extraordinary visitation to Clint. Pursuant to their agreement, Natalie was given final decision-making authority over the children's medical decisions. In 2018, Natalie applied to modify the parties' divorce decree due to her impending move to Ashland, Nebraska. The parties resolved the modification action by stipulation, resulting in reduction of Clint's mid-week visitation and Natalie retaining final decision-making authority regarding the children's medical care. The district court approved the parties' modification stipulation in early 2019.[1]

Approximately ten months later, Clint filed this modification action seeking to change the physical care provisions pertaining to the children. He claimed a

---

[1] We will refer to the decree approving the parties' stipulated modification as "the 2019 modification decree."

change of circumstances since entry of the 2019 modification decree warranted his requested modification.

The evidence presented at trial shows that, consistent with her stated intentions when the 2019 modification decree was entered, Natalie and the children moved to Ashland, Nebraska, where they reside in a two-bedroom apartment. Natalie and Clint's son has had significant behavioral challenges for several years. More recently, their daughter began exhibiting behaviors indicative of immaturity and aggression toward others. Both children have begun seeing mental health and occupational therapists.

In terms of other significant circumstances affecting the children, the evidence established that Natalie has been engaged in a three-year long relationship with a man named Matt, who lives in the same apartment complex, though in a separate apartment. In the fall of 2019, Matt began having physical care of his teenage son. Matt's son has significant behavioral challenges. With Natalie's efforts to blend their families, Natalie and Clint's children had frequent interactions with Matt's son. Most notably, there was an incident in April of 2020, during the pendency of this action, in which Matt's son became violent with Matt while Natalie and the children were present. Natalie was forced to keep the children in a back room of the apartment where the incident was occurring because it was not safe to exit. While remaining in hiding, she called the police while the children called and spoke to Clint on the phone. The children's interactions with Matt's son are typically characterized by outbursts, some physical contact, and frequent verbal disputes. Matt's son has also reportedly kicked Natalie and Clint's son in the chest and has held a BB gun to his head. Matt's son is reported be a

trigger for the parties' son's behavioral problems, and also triggers anxiety in their daughter, as reported by the children's therapist.

Turning our attention to Clint's petition for modification that initiated this action, Clint cited several changed circumstances he believed warranted a modification. Those circumstances included the children's escalating behavioral problems, aggravating environmental conditions while in Natalie's care, and Natalie's inability to manage the escalating behaviors. After the aforementioned incident in April, Clint filed a motion requesting temporary custody of the children until trial could be held in this modification action. Based on the circumstances, which included Matt's child being placed in treatment away from the parties' children and the children being on their summer break from school, the district court ordered the parties to follow a schedule whereby the parties would alternate time with the children on a weekly basis until the modification trial.

The case proceeded to trial. The district court found sufficiently substantial changes in circumstances warranting a modification of the physical care arrangement, and also found Clint to be better suited to parent in the children's best interests. Accordingly, the district court modified the decree to grant Clint physical care of both children and granted Natalie visitation every other weekend along with one full week in June, July, and August. Natalie now appeals, asserting there was not a substantial change in circumstances of a permanent nature warranting modification of the physical care provisions of the decree. Further, she contends the district court mistakenly misconstrued the evidence in reaching its decision.

## II.    Standard of Review

We review an order modifying a decree of dissolution de novo.  *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014).  The district court's findings are not binding.  *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  However, particular weight is given as to the district court's witness credibility findings.  *Id.*  Even though our review of a modification action is de novo, there is deference to the district court in that we will affirm unless the court failed to do substantial equity.  *See Ryan v. Wright*, No. 17-1375, 2018 WL 2246882, at *2 (Iowa Ct. App. May 16, 2018) (citing *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016)).  The child's best interest is the "controlling consideration."  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

## III.    Modification of Physical Care

Natalie contends there was not a substantial change in circumstances not in the court's contemplation at the time of entry of the 2019 modification decree that warrants modification of the physical care arrangement.  As the party seeking the modification, the heavy burden is on Clint to prove there was a substantial change in circumstances.  *See In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980).  The principles governing a physical care modification are well-established:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody

from the other must prove an ability to minister more effectively to the children's well being.

*Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). The primary focus in light of these principles is the best interests of the children. *In re Marriage of Fennelly*, 737 N.W.2d 97, 191 (Iowa 2007). The district court agreed with Clint that there has been a substantial change in circumstances, and we agree.

Natalie focuses on the principle that the substantial and material change in circumstances must have occurred since the last decree–in this case the 2019 modification decree. We agree with Natalie that Clint had the burden to show the requisite change of circumstances since entry of the 2019 modification decree. *See Hoffman*, 867 N.W.2d at 32. However, we disagree with Natalie's contention that the district court impermissibly considered circumstances dating to before the original dissolution decree in determining there were changed circumstances. In its opinion, the court did note Natalie's relocations prior to the 2019 modification decree and the children's school changes. However, in its opinion, the court primarily focused on events occurring since the 2019 modification decree. Those events include escalation of behavioral problems, including the son's escalation of destructive behavior evidenced in the summer and fall of 2019, when he destroyed property in Natalie's apartment and property at his schools. The court also considered an incident that occurred during one of the son's telehealth occupational therapy appointments when Matt's son was present. The boys' interactions in the apartment prompted the therapist to contact child protective services due to safety concerns related to their interactions. The district court

categorized these incidents occurring since entry of the 2019 modification decree as escalations in behavior constituting changed circumstances, and, on our de novo review, we agree.

At the time of entry of the 2019 modification decree, it was in the parties' contemplation that their son had certain diagnoses that manifested themselves in challenging behavior. It was not, however, in the parties' nor the court's contemplation that their son would begin exhibiting escalations in behavior or that their daughter would begin to exhibit concerning behaviors while in her mother's care. Natalie herself testified that in October 2019 their son really began "going off the rails."

The court also cited environmental factors as a change in circumstance as well. The daughter's occupational therapist testified that she believes the daughter's concerning behaviors are a result of her environment living with Natalie, and there is no evidence of exhibiting these behaviors when she is spending time with Clint. Such behaviors include being unhygienic and unkempt when arriving for appointments while in Natalie's care, having a generally poor demeanor when coming from Natalie's care, and exhibiting a lack of emotional connection with Natalie. The therapist testified to the daughter being clean, well presented, and energetic when coming from Clint's care. Clint and his wife Laura testified to both children exhibiting significantly less concerning behaviors while in their care as well. In fact, they saw almost no need for their daughter to be in occupational therapy, as the issues Natalie points to are not present at their home. The son's therapists also testified to similar presentations when he arrives for appointments,

noting significant differences in his attitude when coming from Clint's care versus coming from Natalie's care.

Natalie has also encountered increased difficulties when attempting to control her son's behavior and outbursts, often relying on Clint to calm him down over the phone or relying on Matt to physically restrain him. These restraints have reportedly caused the son physical pain, yet Clint and Laura report rarely needing to resort to physical restraint to control the son's outbursts.

Natalie contends these circumstances are not permanent so as to justify a modification to the custody arrangement. We agree with Natalie that the changed circumstances must be "more or less permanent, not temporary" to support modification. *See id.* However, we disagree with Natalie's contention that Clint has not made such a showing. In making her argument, Natalie points to the district court's discussion of two incidents in April of 2020. During those incidents, Matt and his son were in a physical altercation in the presence of Natalie and her children. Natalie removed the children to a separate room and called the police. In the days following, Matt's son physically harmed Natalie's son by kicking him in the chest. Natalie points to these instances as temporary and resulting from transitioning to at-home working and schooling due to the COVID-19 pandemic. It is clear, however, that these incidents are only two specific examples of the escalating behaviors and unsafe environment that have been occurring since the previous modification. Natalie and Matt have been in a relationship for several years, and as noted by the district court, it does not appear there will be any change in that going forward. They both testified to a desire to have all three children together again in the future. While the district court considered these two events

in its determination, as it should have, it also considered the additional changed circumstances as set out above. Accordingly, the argument that the district court relied only on temporary considerations is unpersuasive. The escalating behaviors and Natalie's increased inability to control those behaviors existed prior to the pandemic and have continued largely unabated since, persuading us the circumstances are more than a temporary event. The changed circumstances identified by the district court and by us on our de novo review have occurred through much of 2019 and 2020. Our standard is "more or less permanent," and this continued escalation and unsafe environment qualifies. *See Simpkins v. Simpkins*, 137 N.W.2d 621, 623 (Iowa 1965) (recognizing the changed circumstances warranting modification "must be 'more or less' permanent or continuous"). We find no reason to disagree with the district court's determinations and accordingly agree that Clint has met his burden of showing a change in circumstance not within the court's contemplation at the time of entry of the 2019 modification decree and such change is more or less permanent.

Though not addressed in Natalie's brief, we consider the fact the party seeking modification must also show that he or she is the parent who is better equipped to parent in the children's best interests. *Frederici*, 338 N.W.2d at 158. The children's therapists testified to their beliefs that many of the children's concerning behaviors, especially the daughter's, are environmentally triggered. It appears there is little follow-through with therapist-recommended exercises and home policies in Natalie's home, leaving the children deprived of the structure they require. Further, Natalie's relationship with Matt has put her children in repeated dangerous situations due to the proximity of and interactions with Matt's son. As

the district court noted in its ruling, "to continue contact between [Matt's son] and either of her children, is absolutely unacceptable." The district court also noted, "Natalie's own testimony convinces the court that she is not putting her children's interests first." Due to Natalie's inability to provide a safe, structured, and consistent household for her children, we agree that Clint is better suited to parent in the children's best interests.

## IV.    District Court's Mistaken Factual Findings

Natalie contends the district court's decision was based on mistaken recollection and misapplied facts. In the court's ruling, it stated a safety plan for Matt's son was implemented before the incident during which Matt's son kicked the parties' son in the chest. Upon review of the record, it is clear the safety plan was implemented after that incident occurred, not before. However, this does not change the outcome of the case. The district court's decision makes it clear it considered circumstances well beyond just the timing of the safety plan implemented to address Matt's son's physical attacks on others. Even if we assumed the district court placed too much weight on this factual mistake, we do not do so on our de novo review. For the reasons explained throughout this opinion, we find the facts warrant modification to place physical care of the children with Clint.

## V.    Appellate Attorney Fees and Costs

Natalie requests that we order Clint to pay her appellate attorney fees. Appellate attorney fees in a dissolution of marriage modification proceeding "are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). The factors we consider include "the

needs of the party seeking the award, the ability of the other party to pay, and relative merits of the appeal." *Id.* Natalie was not successful on appeal, and any imbalance between Clint's ability to pay and Natalie's need does not rise to a level to warrant an award of appellate attorney fees. Therefore, we deny Natalie's request for appellate attorney fees. Each party shall be responsible for his or her own attorney fees. Costs of this appeal are assessed to Natalie.

**AFFIRMED.**