# IN THE COURT OF APPEALS OF IOWA

No. 22-2009
Filed September 27, 2023

IN RE THE MARRIAGE OF KWOT OMOT GILO
AND ARIAT OKURI LOUCH

Upon the Petition of
KWOT OMOT GILO,
    Petitioner-Appellant,

And Concerning
ARIAT OKURI LOUCH,
    Respondent-Appellee.

_____

      Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, Judge.

      Kwot Gilo appeals the provision of the dissolution degree awarding Ariat Louch physical care of their minor son. **AFFIRMED.**

      P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellant.

      Erin O. Planalp of Iowa Legal Aid, Council Bluffs, for appellee.

      Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

Kwot Gilo appeals from the physical-care determination in the decree dissolving his marriage to Ariat Louch, arguing that the district court incorrectly granted Ariat physical care of their minor child, born in 2011.[1]  On appeal, Kwot asserts that the district court should have granted him physical care because relocating the child to Minnesota was not in the child's best interest, Ariat's language barrier impedes their child's development, she neglected the child's dental health, and she denied Kwot meaningful contact with the child.  Upon our de novo review, we find that awarding physical care of the child to Ariat serves his best interests and, accordingly, affirm.

**I. Background Facts and Prior Proceedings.**

Kwot and Ariat married in Ethiopia in December 1989.  Kwot moved to the United States in 1994 and speaks, reads, and writes Anuak,[2] Amharic, and English.  With Kwot's help, Ariat moved to the United States  in 2000.  While she speaks, reads, and writes Anuak, she can speak, read, and write in English on only a limited basis.  At the dissolution trial, Kwot testified he believed Ariat's poor grasp of English limited her parenting role as he felt she could not fill out school forms or medical care documents for the child.  Ariat contended she has functioned well as a parent and employee since 2000 but acknowledged she is often dependent on help from her friends or Kwot.  Since arriving in the United States, Kwot attained an associate's degree in computer technology and works as a case

---

[1] These parents had three children together but only the youngest is impacted by these proceedings.
[2] The record also has this language spelled Anyuk and Anyuak.

manager in a refugee center. Although the parties disputed the availability of education for girls in Ethiopia, it was undisputed that Ariat arrived in the United States without any formal education, yet she has maintained part-time employment, most recently in a food processing plant. Their child speaks, reads, and writes English, but he is not proficient in Anuak and the parties disputed how well the child and Ariat could communicate.

In 2011, when the child was an infant, Ariat moved with the child to Minnesota; she testified that Kwot helped her move and she thought he was going to move there with her. He testified she left without his knowledge or agreement. As another reason for the move, Ariat pointed to her need for medical treatment in that state. Kwot remained in Iowa with the older two children and raised them alone until Ariat returned to Iowa and moved back in with him. The timing of this family living arrangement was disputed at the dissolution trial—Ariat said she was gone one year while Kwot maintained she spent four years in Minnesota.

After returning to Iowa, Ariat filed a petition for relief from domestic abuse in August 2016, and the district court granted a temporary protective order that was in place until the case was dismissed eleven days later. Kwot petitioned for dissolution of marriage at the same time but voluntarily dismissed it. Then, in March 2018, Kwot and Ariat had an altercation that resulted in a charge of domestic abuse assault causing injury or mental illness against Kwot. When explaining that incident at the dissolution trial, Ariat testified that Kwot pushed her out of bed and onto a space heater; Kwot testified that he pushed her with his feet and she was hit by a door. Both parties agreed that Ariat was bleeding and required a trip to the emergency room for stitches; they also agreed that the child was present in the

home at the time. Kwot pled guilty to disorderly conduct and a one-year criminal no-contact order was put into place. Following the institution of the no-contact order, the parties began living at separate residences.

While the parties were living apart, Kwot visited the children in the evenings and on weekends five or six times each week. But once the middle child graduated from high school, Ariat testified her medical condition required she move back to Minnesota for specialized treatment at a clinic there. So, in September 2021—after Ariat moved, taking the youngest child with her—Kwot again petitioned to dissolve the marriage and asked that he be awarded physical care of the child.

Now that Ariat and the child were again living in Minnesota, Kwot attempted visitation with the child. At trial, Kwot alleged that Ariat would not allow him access to the child or to the school he was attending in Minnesota. Over Thanksgiving, when Ariat would not permit the child to spend the night with Kwot, he decided to request a temporary order giving him physical care of the child. In his application, Kwot alleged that Ariat unilaterally moved out of state with the child and was refusing to allow Kwot any "meaningful" parenting time, visitation, or communication with the child. Around this same time, Kwot noticed that the child had a baby tooth that had not fallen out and caused the permanent tooth to remain impacted.

In December 2021, the district court held a hearing on the application for temporary physical care, which Ariat did not attend.[3] The district court granted temporary joint legal custody with physical care to Kwot and ordered that any visits

---

[3] Ariat was served notice of the hearing, but cited the language barrier as her reason for not attending.

between Ariat and the child take place in Iowa and Kwot should facilitate daily contact between the two. At the dissolution trial, Ariat contended she had limited contact with the child following the temporary hearing, both in person and by phone, and that Kwot did not communicate with her about the child's medical care or schooling. Kwot challenged this characterization, testifying he paid for her to return to Iowa for the older son's college graduation, during which time he offered unlimited visitation, and that when he went to Minnesota on several occasions he would facilitate visitations between Ariat and the child.

The dissolution trial was held September 8–9, 2022. At trial, both Kwot and Ariat presented a stipulation as to all issues, including an agreement over joint legal custody, but they disputed who should have physical care of their child. The district court awarded physical care to Ariat, finding that, while Kwot had been involved in the child's life, Ariat was historically his primary caregiver and her English-language abilities were sufficient to meet the child's day-to-day needs. The physical-care award was subject to Kwot's reasonable and liberal visitation rights. Kwot filed a post-trial motion to reconsider, amend, or enlarge the award of physical care to Ariat. The district court overruled the motion, finding that Kwot had made the same arguments at trial and that the district court found them unconvincing then. Kwot now appeals.

**II. Standard of Review.**

We review the district court's award of physical care de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). We are not bound by the district court's fact findings, but we generally defer to them because the district court is better able to

make the factual determinations since it is "able to listen to and observe the parties and witnesses." *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009); *In re Marriage of Scurr*, No. 11-1905, 2012 WL 2122306, at *3 (Iowa Ct. App. June 13, 2012) ("[W]e believe the district court, with its unique ability to assess witness demeanor, was in the best position to determine which . . . parent should serve as physical caretaker.").

**III. Discussion.**

In assessing which physical-care arrangement is in the child's best interests, we consider a number of factors from Iowa Code section 598.41(3) (2021) as well as those identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), including the child's needs and characteristics, the parents' abilities to meet those needs, and the effect of continuing or disrupting the child's current status. We also consider the unique facts of each case, ensuring the child is placed "in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). But central to the physical-care determination are continuity of caregiving and stability as "past caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so difficult for courts to ascertain." *Id.* at 696 (citing Katherine T. Bartlett, *Child Custody in the 21st Century: How the American Law Institute Proposes to Achieve Predictability and Still Protect the Individual Child's Best Interests,* 35 Willamette L. Rev. 467, 480 (1999)). Importantly, "[p]hysical care issues are not to be resolved based upon perceived fairness to the spouses, but primarily upon what is best for

the child." *Id.*; *see* Iowa R. App. P. 6.904(3)(o) ("In child custody cases, the first and governing consideration of the courts is the best interests of the child.").

On the plus side, the district court found that both parents have demonstrated the ability to care for the child and neither parent disputed that at trial—hence the agreement for joint legal custody. But because of the distance between the parents' homes, the parties could not agree which parent could best serve as the primary caregiver. After considering the factors important in making this decision and—although it is a close call—we agree with the district court that the child's best interests require he remain in Ariat's physical care. First, the child spent most of his life in Ariat's physical care. *See* Iowa Code § 598.41(3)(d) (considering "whether both parents have actively cared for the child before and since separation"). For at least the first year of the child's life, Ariat and the child lived in Minnesota, while Kwot lived in Council Bluffs with the two older children.[4] And while the timeframe is unclear, Kwot testified that he only lived under the same roof as the child for three years, or less than one-fourth of the child's life. And even when Ariat returned to Iowa, while Kwot lived in the same house as the child until 2018, Kwot testified that Ariat was responsible for the child's daily care, which included providing meals for the family and maintaining the apartment. What makes this a close question is that Kwot successfully raised the two older children while Ariat was in Minnesota the first stretch—supporting their educational pursuits (both are in college now) and encouraging involvement in sports, clubs, and church. And as to the child at issue here, by all accounts, from December 2021

---

[4] Kwot claims that it was four years rather than the one year Ariat contends, but that does not help his case over the caregiving status quo pre-decree.

until trial in September 2022, Kwot handled physical care duties well. This confirms the importance of his continued involvement in the child's life, but we note he can still support the child's education, involvement in activities, and medical and dental care even from afar. In the past both parties were involved with the child's health needs and, as for Kwot's assertion that Ariat failed to address the child's dental problem, the evidence at trial was that the older children noted a problem, not the parents, and no one objected to the child's need for braces.

What tips the scales here is the stability and continuity of caregiving that Ariat provided since the child's birth. Physical care is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7). Other than the months that Kwot had temporary physical care of the child, for the majority of the years of the child's life, Ariat took responsibility for routine caretaking, even adapting her work schedule to ensure that she could do so. We afford weight to the parent who historically acted as the child's primary caregiver. *See Eviglo v. Bedia*, No. 22-2108, 2023 WL 4530263, at *2 (Iowa Ct. App. July 13, 2023); *Flick v. Stoneburner*, No. 15-1930, 2016 WL 2743449, at *2 (Iowa Ct. App. May 11, 2016). In this instance, Ariat has historically provided an environment supporting the best interests of the child and, thus, affirming physical care with Ariat is appropriate.

Second, Kwot urges that Ariat's language difficulties will impose barriers for the best interests of the child. As for the child's alleged inability to communicate with his mother, the record did not support that dynamic. Instead, Kwot testified that during the time he had temporary care, Ariat and the child spoke on the phone multiple times each week, and Kwot submitted phone records to support this. A

panel of our court had addressed the impact of English-language ability as a physical-care factor to consider. *See In re Marriage of Garcia Lopez*, No. 16-0915, 2016 WL 6269895, at *2 (Iowa Ct. App. Oct. 26, 2016). In *Garcia Lopez,* our court found because the father spoke only Spanish, while the mother was bilingual—speaking Spanish and English—the father's lack of attendance at medical and school appointments coupled with his inability to help with school assignments mitigated against a physical-care award to him. *Id.* Here, even accepting that Ariat has a lower level of English proficiency than Kwot, the record establishes that Ariat took the child to medical and dental appointments, enrolled him in school, and saw to his daily needs including preparing meals. She maintained employment, has a driver's license, and, with some help, navigated government funding sources to access an apartment. Her language abilities do not outweigh the other factors considered, including Ariat's historical caretaker role and her ability to meet the child's day-to-day needs.

Lastly, Kwot's history of domestic abuse weighs against giving him physical care of the child. *See* Iowa Code § 598.41(3)(j) (allowing for consideration of whether there is a history of domestic abuse); *In re Marriage of Mulford*, No. 03-1259, 2004 WL 894566, at *2 (Iowa Ct. App. Apr. 28, 2004) ("[D]omestic abuse is a significant factor to be considered when determining which parent should receive physical care."). More specifically, "domestic abuse is in every respect dramatically opposed to a child's best interest." *Mulford*, 2004 WL 894566, at *2; *see also Hoggatt v. Walton*, No. 16-0404, 2016 WL 7393903, at *1–2 (Iowa Ct. App. Dec. 21, 2016) (awarding physical care to the mother when the father denied that he committed domestic abuse despite two convictions for it). Kwot has one

conviction for disorderly conduct stemming from a domestic dispute. The record shows that two protective orders were granted against Kwot—a temporary protective order and the criminal no-contact order stemming from the disorderly-conduct conviction. Likewise, Ariat testified about an earlier incident of alleged domestic abuse from 2016 and stated that Kwot had been beating her up for years but that she only got the police involved once because she was thinking of their children. This is yet another factor that weighs towards awarding physical care with Ariat.

As his final claim on appeal, Kwot asserts that Ariat denied him meaningful contact with the child while she and the child were living in Minnesota. The district court noted that both parents had failed to support open contact and communication, and the court emphasized that the both "need to actively work on supporting each other's role in caring for [the child]." We agree and see much of the lack-of-communication claims to be part of the jockeying for physical-care status. With this issue at the forefront at trial, Ariat testified that she had no intention of denying Kwot access to visits with the child, and the district court found this statement credible. And to the contrary, the district court found that Kwot was more likely to deny Ariat meaningful contact. Although we are not bound by them, we give weight to the factual findings of the district court concerning the credibility of witnesses. Iowa R. App. P. 6.904(3)(g); *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Plus, Ariat provided credible reasons for the second move to Minnesota: access to medical care and support from her friends and family in Minnesota, similar to the time she first moved to Minnesota. *See Scurr*, 2012 WL 2122306, at *3 (finding that a move for employment and to be close to family

did not preclude an award of physical care). For this reason, we do not find the factor involving the denial of meaningful contact weighs towards awarding physical care to Kwot.

**IV. Conclusion.**

"In close cases such as this, we give careful consideration to the district court's findings." *In re Marriage of Reed*, No. 09-0029, 2009 WL 4122884, at *6 (Iowa Ct. App. Nov. 25, 2009); *see also In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996) ("[I]n the end we determine this to be a close case, for both parents love their [child] very much and each is capable of providing for their long-range best interests. In situations such as this, we note the district court had the parties before it and was able to observe and evaluate the parties as custodians."). Here, the district court found both Kwot and Ariat to be appropriate parents before awarding physical care to Ariat. Because we find that awarding physical care of the child to Ariat will serve the child's best interests, despite Kwot's objections to a relocation to Minnesota and Ariat's English-language abilities, we affirm the district court.

**AFFIRMED.**