**IN THE COURT OF APPEALS OF IOWA**

No. 25-0107
Filed September 4, 2025


IN RE THE MARRIAGE OF KOLIN WILLIAM FERNEAU
AND ELIZABETH GRACE FERNEAU

Upon the Petition of
KOLIN WILLIAM FERNEAU,
        Petitioner-Appellee,

And Concerning
ELIZABETH GRACE FERNEAU n/k/a ELIZABETH GRACE KASTEIN-FERNEAU,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Tama County, Lars G. Anderson,

Judge.


        Elizabeth Kastein-Ferneau appeals an order modifying the decree

dissolving her marriage to Kolin Ferneau.  **AFFIRMED.**



        Kelly L. Grossman of The Law Shop Iowa, Van Meter, for appellant.

        Stephen Babe of Cordell Law, LLP, Des Moines, for appellee.


        Considered without oral argument by Schumacher, P.J., and Badding and

Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Elizabeth Kastein-Ferneau appeals an order modifying the physical-care provisions of the decree dissolving her marriage to Kolin Ferneau. She claims the district court erred by finding a material and substantial change in circumstances had occurred since the decree warranting modification, by giving "improper weight and deference . . . to unsubstantiated claims and a prejudicial child and family reporter's report," and by failing to consider "alternative remedies." Upon our review, we affirm.

## I. Background Facts and Proceedings

Elizabeth and Kolin began living together in approximately 2010. Their child, A.F., was born in 2013. Elizabeth and Kolin married in 2019. In 2020, Kolin petitioned for dissolution of the marriage. In February 2021, the parties reached a stipulation, and the court entered a dissolution decree adopting their agreement for joint legal custody and joint physical care with a "week-on, week-off schedule."

Approximately eighteen months later, Kolin filed a modification petition. He requested sole legal custody and physical care of A.F. Elizabeth counterclaimed, seeking physical care of the child. Elizabeth also filed a contempt application, claiming in part that Kolin had not allowed her contact with the child. Following a hearing, the court found Kolin in contempt on one count of "failing to follow the care schedule" and temporarily modified the care schedule to "provide make up parenting time" for Elizabeth.

Kolin filed a motion for appointment of a child and family reporter (CFR), which was unresisted by Elizabeth. The court entered an order appointing Annie Von Gillern as the CFR. The court ordered the CFR to "obtain information

regarding both parties' home conditions, parenting capabilities, and other matters pertinent to the best interests of the child" and prepare a report following her investigation.

A one-day trial took place in November 2024, during which Elizabeth and Kolin testified. Both parties were employed, and they lived "[l]ess than five minutes" from each other. Elizabeth lived in a three-bedroom apartment with A.F. and Elizabeth's older daughter, F.Z. (born in 2008). Elizabeth's sister had also lived with them until Elizabeth "kicked her out." Another of Elizabeth's children, A.Z. (born in 2005), had also recently lived in the apartment, but Elizabeth testified she no longer lived there. However, Elizabeth acknowledged A.Z. had been charged in connection with marijuana and drug paraphernalia found in her bedroom at Elizabeth's apartment.[1] Elizabeth admitted her "children fight quite a lot." She acknowledged her relationship with A.F. was emotionally charged and volatile. Elizabeth agreed she sent disparaging text messages to A.F. about Kolin, including telling the child, "He's never taken care of you," and "He manipulates you and everyone else."

While Elizabeth maintained that Kolin did not support her relationship with A.F., she withdrew her counterclaim for physical care at the modification hearing, stating, "I really just want the shared care. I want everything to stay the same." Elizabeth opined that shared care was working "for the most part." She stated her relationship and communication with Kolin had "always been . . . pretty bad," and she acknowledged "today is a long time coming."

---

[1] A.Z. was under eighteen years old at the time.

Kolin lived alone with A.F., and they also spent significant time at Kolin's mother's farm. A.F. shared a close relationship with her paternal grandmother. Kolin stated even though the parties had agreed to joint care, Elizabeth previously allowed A.F. to spend most of her time with him because they agreed that was "what was best for [A.F.]" In early 2022, A.F. expressed to Kolin that "she no longer wanted to go to her mother's," and Elizabeth's time with A.F. became "[a]lmost nonexistent."

After Kolin filed for modification, Elizabeth began enforcing the decree's joint-care provision. Kolin expressed concerns about the stability of Elizabeth's living arrangement after learning she was in arrears on her rent. He purchased food for Elizabeth's home "[a]lmost weekly."[2] Both Kolin and A.F. expressed concerns about substance-use in and around the apartment, violence, and the presence of older males who made A.F. "feel uneasy."[3] Kolin requested sole legal custody and a parenting schedule of "one overnight per week" to Elizabeth, as recommended by the CFR.

The district court denied Kolin's request for sole legal custody, stating, "Elizabeth still appears to have an important relationship with [A.F.] and after reviewing all the factors in [Iowa Code section 598.41(3) (2023)], . . . it is not

---

[2] Elizabeth agreed that A.F. asks Kolin "to bring food quite often" "[b]ecause she doesn't like what I cook."

[3] For example, in December 2022, A.F. sent a picture to Kolin of an adult male, F.T., who was sitting with her in Elizabeth's living room and stated F.T. was "making [her] feel uncomfortable." F.T. had a reputation for being a known drug user. The record shows that several weeks prior, F.T. had been charged with possession of contraband in a correctional institution after he brought methamphetamine to the Tama County Jail upon his arrest for operating while intoxicated, second offense.

appropriate to terminate that relationship."[4]  Relating to physical care, however, the court found a substantial change in circumstances had occurred.  Specifically, the court found the parties' inability to resolve issues between them and prioritize A.F.'s best interests made their joint-physical-care arrangement unworkable.  And after weighing the parties' relative caretaking abilities, the court found that "primary physical care of [A.F.] should be awarded to Kolin."  As the court stated:

> The court does have concerns about Kolin.  He has involved [A.F.] in these proceedings, spoken negatively about Elizabeth to [A.F.], and has not always supported [A.F.]'s relationship with Elizabeth. But, on the available evidence, the court finds that Kolin can more effectively meet [A.F.]'s needs.  Outside of concerns about drug use and violence in Elizabeth's home, which are themselves concerning, the evidence establishes a certain degree of chaos in Elizabeth's life and home that does not exist in Kolin's life or home.  The evidence also establishes that Kolin and [A.F.] have a stronger relationship currently than Elizabeth and [A.F.] and that [A.F.] feels safer and more secure in Kolin's home.  As reported by the CFR, Kolin is the parent who is best able to enforce rules and provide structure based on his relationship with [A.F.]  The court is also concerned about Elizabeth's reluctance to engage [A.F.] in therapy.

Accordingly, the court modified the decree to place physical care with Kolin. The court ordered Elizabeth to have reasonable and liberal parenting time "as mutually agreed upon by the parties," but minimally every other weekend from 5:00 p.m. on Friday to 5:00 p.m. on Sunday and every Wednesday from 5:00 p.m. to 7:30 p.m.  Elizabeth appeals.

## II.    Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo.  Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  We give weight to the factual findings

---

[4] The court's decision regarding legal custody is not at issue on appeal.

of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interests of the child is our primary consideration. Iowa R. App. P. 6.904(3)(n); *Hoffman*, 867 N.W.2d at 32.

## III. Modification of Physical Care

A parent seeking modification of a joint-physical-care arrangement must establish a substantial change of circumstances not contemplated by the district court when the decree was entered that is more or less permanent and must prove superior caretaking ability. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *see also In re Marriage of Mantey*, No. 22-1182, 2023 WL 2396550, at *1 (Iowa Ct. App. Mar. 8, 2023) (observing some cases call for proof of "better" rather than "superior" care and stating the terms are "synonymous"). Elizabeth challenges the district court's finding that there was a change in circumstances warranting modification of the parties' physical-care arrangement. She claims "[t]here has not been a showing of any changes in circumstances that weren't the product of Kolin's actions since the Decree."

According to Elizabeth, the district court incorrectly relied on its perceived lack of knowledge of parental conflict by the decreeing court, claiming "[t]he court's inquiry should be whether the circumstances alleged as the basis for modification were essentially the same or known to the parties at the time of the decree as they were at the time of the modification action." To support her claim, Elizabeth points to the following statement by district court: "With decrees incorporating parties' settlement agreements, it is not always clear what was contemplated by the court. The undersigned suspects that the decreeing court was not aware of the parties'

tumultuous pre-decree relationship." But the court's next statement clarifies this issue and dispels Elizabeth's claim: "However, the decreeing court certainly expected that to the extent there were issues between the parties, the parties would be able to make joint physical care work and that they would be able to resolve or minimize issues between them to make that happen, putting [A.F.]'s best interests first. That has not happened . . . ."

Indeed, the parties stipulated to joint physical care of A.F. and the court adopted their agreement. But the record reflects the parties have been unable to provide a stable and consistent routine for the child since the dissolution of their marriage. *Cf. In re Marriage of Zumbrunnen*, No. 24-1104, 2025 WL 1704370, at *2–3 (Iowa Ct. App. June 18, 2025) (analyzing considerations in determining whether a substantial change in circumstances warrants modification). They have not shown mutual respect or an ability to solve problems relating to the child's care, and the child has been placed directly in the middle of their conflict. *See id*.; *see also Hoffman*, 867 N.W.2d at 32 (requiring the changed circumstances to relate to the welfare of the child).

As the CFR reported, "Co-parent communication is virtually non-existent between parties. All communication goes through A.M.F., putting her directly in the middle of the parenting conflicts." The CFR also noted Elizabeth resorted to "personal jabs" during communications with Kolin and "name calling and dismissal" of A.F. during communications with her "pre-teen daughter." The CFR opined "[t]he parties have two very different relationships and attachment styles to [A.F.]," which trigger a "stress or survival response" for A.F. when she was in Elizabeth's care. The parties' testimony and other evidence in the record corroborates the

CFR's findings. In short, the record supports the conclusion that a substantial change in circumstances warranted modification of physical care. Because Elizabeth does not challenge the court's finding that Kolin could provide superior care, we affirm on this issue.

**IV. CFR Report**

Elizabeth claims the court gave "improper weight and deference . . . to unsubstantiated claims and a prejudicial [CFR] report." Although the CFR was more critical of Elizabeth's parental shortcomings than Kolin's, the CFR recognized weaknesses in Kolin's parenting as well. Elizabeth provides no support for her bare assertion, and we find it unpersuasive.

> The court may require . . . a child and family reporter to obtain information regarding both parties' home conditions, parenting capabilities, and other matters pertinent to the best interests of the child . . . in a dispute concerning custody of the child . . . . A report of the information obtained shall be submitted to the court and available to both parties. The report shall be a part of the record unless otherwise ordered by the court.

Iowa Code § 598.12B(2). Here, the CFR "gave several pertinent opinions on underlying parenting factors." *See Mantey*, 2023 WL 2396550, at *1. And as noted above, the CFR's findings were corroborated by other evidence in the record. *See id*. at *2. Finally, the district court's recitation of the CFR's findings was consistent with the CFR's report. We affirm on this issue.

**V. Alternative Remedies**

Elizabeth claims the court failed to consider "alternative remedies consistent with the best interests of the child." According to Elizabeth, "[b]efore modifying physical care, the district court should have considered less disruptive alternative remedies to address co-parenting conflicts, such as co-parenting

classes, family therapy, or the appointment of a parenting coordinator." This issue was neither raised before nor decided by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Accordingly, it is not preserved for our review. *See In re Marriage of Waller*, No. 24-0266, 2025 WL 1324237, at *6 (Iowa Ct. App. May 7, 2025) (applying error-preservation requirements to a dissolution-of-marriage proceeding).

## VI. Appellate Attorney Fees

Both parties request appellate attorney fees. Elizabeth requests an award of $4000, and Kolin requests an award of $2500. An award of appellate attorney fees is not a matter of right but rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In deciding whether to award appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In consideration of these factors, we deny the parties' requests.

## VII. Conclusion

We affirm the district court's modification order. We decline to award appellate attorney fees. Costs on appeal are taxed to Elizabeth.

**AFFIRMED.**